IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHANTIMEKKI FORTSON,                    )
individually and as the personal        )
representative of the Estate of Roger    )
Fortson,                                 )
                                         )        Case No. 3:25-cv-0591
        PLAINTIFF,                       )
                                         )        Judge
v.                                       )
                                         )        Magistrate Judge
SHERIFF ERIC ADEN, in his official       )
capacity;                                )
DEPUTY EDDIE DURAN,                      )
in his individual capacity;              )
CHEZ ELAN FL PROPERTY, LLC,              )
a Delaware business entity; and          )
JANE DOE,                                )
                                         )
        DEFENDANTS.                      )
_____  )

## COMPLAINT

## INTRODUCTION

This civil action seeks to hold accountable those responsible for the

wrongful death of Airman Roger Fortson, a 23-year-old active-duty member of the

United States Air Force, who was fatally shot inside his own home by an Okaloosa

County Sheriff's Deputy. Mr. Fortson, who was lawfully in possession of a legally

owned firearm and posed no threat, was killed as a result of a cascade of negligent,

1

reckless, and unconstitutional actions by both law enforcement and the apartment complex where he resided.

This lawsuit brings claims under 42 U.S.C. §1983 and Florida law, including claims for excessive force, municipal liability, wrongful death, negligence, and gross negligence.

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because it arises under the Constitution and laws of the United States, including 42 U.S.C. §1983; 28 U.S.C. §1343(a)(3), because it is brought to redress deprivations, under color of state authority, of rights, privileges and immunities secured by the United States Constitution; and 28 U.S.C. §1343(a)(4), because it seeks equitable relief under 42 U.S.C. §1983.

2.     This Court can exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367, because they form part of the same case or controversy as Plaintiff's federal-law claims.

3.     Venue is proper in this District under 28 U.S.C. §1391(b), because the events and omissions giving rise to the claims occurred within this District, and all Defendants reside in or conduct business in this District.

## PARTIES

4.    Plaintiff Chantimekki Fortson is the mother of Roger Fortson and is a citizen of the State of Georgia. She has been appointed by a Georgia court as the personal representative of the estate of Roger Fortson. She brings this action on behalf of herself, on behalf of the estate, for the benefit of the estate, and for the benefit of Fortson's surviving family members.

5.    Decedent Roger Fortson was a resident of Okaloosa County, Florida, and a member of the United States Air Force, lawfully residing at Apartment 1401, 319 Racetrack Road NW, Fort Walton Beach, Florida. His home of record was Georgia.

6.    Defendant Sheriff Eric Aden is the Sheriff of Okaloosa County, an office created by the Florida Constitution and the Florida Statutes. His organization is also known informally as the "Okaloosa County Sheriff's Office" or "OCSO." He is responsible for the supervision, training, and conduct of his deputies.

7.    Defendant Deputy Eddie Duran was at all relevant times employed by the Sheriff of Okaloosa County and acted under color of state law. He is sued in his individual capacity.

8.    Defendant Chez Elan FL Property, LLC is the owner of the Elan Apartments, a residential apartment complex in Fort Walton, Florida. Chez Elan FL

Property, LLC is a Delaware limited liability company with its principal place of business in New York.

9.    Chez Elan FL Property, LLC is registered as a foreign limited liability company, and its registered agent is Interstate Agent Services, LLC, 100 SE 2nd Street, Suite 2000 #209, Miami, FL 33131.

10.    The manager of Chez Elan FL Property LLC is Binyamin Beitel, whose state of residence is New York.

11.    Chez Elan FL Property, LLC employed Jane Doe and is responsible for her actions under the doctrine of *respondeat superior*.

12.    Defendant Jane Doe is an individual whose full name is currently unknown, employed at the Elan Apartments by Chez Elan FL Property, LLC as a leasing agent at the time of the incident.

13.    Plaintiff has made diligent inquiries to learn the identity of Jane Doe. To date, these inquiries have been unsuccessful primarily because her name is redacted in all reports and documents that Plaintiff has been able to obtain from the Sheriff, and because the corporate defendant has refused to identify her. Plaintiff obtained a name through other means, but it is unverified at this time. Plaintiff will continue her efforts to confirm Ms. Doe's identity, and will seek leave to amend this complaint as soon as it is ascertained.

## <u>CONDITIONS PRECEDENT</u>

14.     All conditions precedent to the maintenance of Florida common law tort actions against required Defendants have been fulfilled pursuant to Section 768.28, Florida Statutes, and no action was taken on the claim within six months after it was filed.

## <u>FACTUAL ALLEGATIONS</u>

15.     Roger Fortson was a 23-year-old active-duty U.S. Airman, lawfully residing alone in Apartment 1401 at the Elan Apartments located at 319 Racetrack Road NW, Fort Walton Beach, Florida.

16.     On May 3, 2024, Mr. Fortson was at home, unarmed and speaking to his girlfriend on his phone via FaceTime, when his life was taken by Okaloosa County Sheriff's Deputy Eddie Duran.

17.     Earlier that afternoon, Jane Doe, a leasing agent believed to be employed by Elan Apartments, called the Sheriff to report a domestic disturbance allegedly occurring in the complex.

18.     Ms. Doe had no direct knowledge of any disturbance and was merely relaying unverified concerns from another resident who had also not witnessed any physical altercation.

19.     Ms. Doe told the dispatcher that the disturbance was occurring in Apartment 1401, Mr. Fortson's apartment.

20. In fact, there was no disturbance in Apartment 1401. Ms. Doe's statement was false.

21. When the dispatcher asked Ms. Doe if the residents were still actively fighting, she replied yes.

22. This information was not based on any present observation or confirmation.

23. Ms. Doe remained on the scene and met with Deputy Duran, who drove to the complex after her call.

24. Ms. Doe escalated the situation by telling Deputy Duran that the current disturbance "sounded like it was getting out of hand" and that a female caller "sounded scared."

25. Ms. Doe also recounted to Deputy Duran her vague recollection of a prior incident from weeks earlier where she thought she heard yelling and a slap. She admitted that she did not know where the yelling had come from but still identified Mr. Fortson's apartment as the source.

26. Ms. Doe had not reported that earlier incident to authorities.

27. Without further investigation and based solely on "fourth-hand" information provided by Ms. Doe, Deputy Duran approached Apartment 1401.

28. Deputy Duran knocked on Mr. Fortson's door but did not initially announce his identity as law enforcement.

29.    Deputy Duran then positioned himself out of view of the peephole and knocked again more aggressively.

30.    From inside, Mr. Fortson, who was still on FaceTime with his girlfriend, could not see anyone through the peephole and heard no identification.

31.    Concerned for his safety, Mr. Fortson told his girlfriend he was going to retrieve his firearm because he did not know who was at his door.

32.    Mr. Fortson then opened the door with the firearm pointed downward, away from the doorway.

33.    Within less than two seconds of the door opening, Deputy Duran shot Mr. Fortson six times.

34.    At no time did Mr. Fortson raise or point the firearm in his right hand at Deputy Duran. His left hand was raised in a non-threatening posture, universally known as surrender. Body camera footage confirmed that the firearm remained at his side and pointed down.

35.    After being shot, Mr. Fortson stated, "It's over there. I don't have it," referring to the firearm, which had fallen to the ground.

36.    Mr. Fortson received no immediate medical aid.

37.    The Sheriff's Internal Affairs unit conducted an investigation. The IA unit's report, **Exhibit A**, determined that Deputy Duran's use of deadly force was not objectively reasonable.

38.    The IA report also determined that Mr. Fortson did not make any hostile or attacking movements, and that deadly force was not justified under the Sheriff's own policies.

39.    The Sheriff fired Deputy Duran as a result of this incident.

40.    On August 23, 2024, Deputy Duran was arrested and charged with manslaughter with a weapon under Florida Statute §782.07(1), in Case No. 4624CF002000A.

41.    The Elan Apartment complex owed a duty of care to Mr. Fortson, to exercise reasonable care in making emergency reports to law enforcement. Both the Elan Apartments and Doe, its employee, failed to meet their duty.

42.    Mr. Fortson's death was a foreseeable and preventable result of both Deputy Duran's excessive use of force and the misleading conduct of Elan Apartments' staff.

43.    As a direct and proximate result of the actions of all Defendants, Airman Roger Fortson wrongfully and unlawfully lost his life.

44.    Plaintiff now seeks justice for the unconstitutional and negligent actions that caused Mr. Fortson's death.

WHEREFORE, Plaintiff demands a trial by jury on all triable issues and judgment for compensatory and punitive damages, attorney's fees and costs, and all other allowable relief.

## CAUSES OF ACTION

### Count 1:
### Excessive Force in Violation of the Fourth and Fourteenth Amendments;
### 42 U.S.C. § 1983
### (Against Deputy Duran)

45.     Plaintiff incorporates paragraphs 1–44 as if set forth herein.

46.     This claim belongs to Mr. Fortson's estate, and Plaintiff brings this count in her capacity as the personal representative of the estate.

47.     At all relevant times, Mr. Fortson had a right under the Fourth and Fourteenth Amendments to be free from the use of excessive and unreasonable force by law enforcement officers. This right was clearly established.

48.     Deputy Duran violated Mr. Fortson's constitutional rights by using deadly force against him despite the absence of any immediate threat or hostile action.

49.     At the time of the shooting, Mr. Fortson posed no threat to the safety of Deputy Duran or others. He never raised, pointed, or threatened with his firearm, which remained at his side and pointed downward.

50.     Deputy Duran's use of force was objectively unreasonable under the circumstances and violated clearly established law.

51.     The Sheriff's own Internal Affairs unit found that the use of force was not justified

52.     The Sheriff terminated Deputy Duran as a result of this incident.

53.     As a direct and proximate result of Deputy Duran's actions, Mr.

Fortson suffered injury and death, and his estate and family have suffered

economic and emotional harm.

**Count 2:**
**Municipal Liability Under *Monell v. Department of Social Services***
**and 42 U.S.C. § 1983**
**(Against Defendant Sheriff Aden)**

54.     Plaintiff incorporates paragraphs 1–44 as if set forth herein.

55.     This claim belongs to Mr. Fortson's estate, and Plaintiff brings this

count in her capacity as the personal representative of the estate.

56.     At all relevant times, Sheriff Aden was the final policymaker for law

enforcement in Okaloosa County and acted under color of state law.

57.     The death of Roger Fortson was directly caused by Sheriff Aden's

failure to train, supervise, and/or discipline his deputies regarding:

　　a.　　The handling of domestic disturbance calls based on unverified or
　　　　　secondhand information;

　　b.　　Proper knock-and-announce procedures, particularly in residential
　　　　　settings involving lawful occupants; and

　　c.　　De-escalation tactics and safe engagement with lawfully armed
　　　　　residents inside their homes.

58.     Deputy Duran's use of deadly force—within seconds of the door

being opened—was not an isolated incident or the result of a rogue actor. It was a

foreseeable consequence of the Sheriff's inadequate and unconstitutional training

practices, which failed to equip deputies with the skills and restraint necessary to assess and safely respond to ambiguous or non-threatening encounters, including non-combative encounters in civilian homes.

59. Notably, just months prior to the killing of Roger Fortson, the Sheriff's Internal Affairs unit completed an internal investigation into another deputy-involved shooting (IA 2023-031, "Acorn Incident"), and produced a report attached as **Exhibit B**. In this incident, Deputy Jesse Hernandez fired multiple rounds into the rear of his patrol vehicle at a handcuffed, unarmed suspect based on a mistaken belief that he was under attack. In reality, an acorn had struck the vehicle. The IA unit concluded that Deputy Hernandez's use of deadly force was not objectively reasonable and violated departmental policy.

60. Despite the Hernandez incident, the Sheriff failed to implement any systemic corrective measures, retraining, or policy revisions to address the use of deadly force in the absence of clear and immediate threats. The pattern of unjustified force continued with the fatal shooting of Roger Fortson under similarly preventable circumstances.

61. The IA report in Mr. Fortson's case likewise confirmed that the use of deadly force by Deputy Duran was not objectively reasonable and violated the Sheriff's Response to Resistance policy.

62.     The Sheriff knew or should have known that his failure to implement safeguards and decision-making frameworks for armed-but-lawful residents would result in constitutional violations, particularly in Florida, where legal firearm ownership is common.

63.     This official finding of these incidents is evidence that the Sheriff's inadequate policies, customs, or training protocols permitted or encouraged deputies to act with deadly force even in the absence of a legitimate threat, thus, demonstrating deliberate indifference to constitutional rights.

64.     Furthermore, these incidents, taken together, demonstrate that the Sheriff had actual or constructive notice of systemic deficiencies in his training and oversight procedures and acted with deliberate indifference to the constitutional rights of citizens.

65.     The Sheriff's intentional failure to act despite known risks constituted a policy, practice, or custom under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and was the moving force behind Mr. Fortson's death.

66.     As a direct and proximate result, Mr. Fortson suffered grievous harm and death. His Estate and surviving family members suffered significant damages, including emotional trauma and financial harm.

## Count 3:
## Wrongful Death; Fla. Stat. §§768.16 et seq.
## (Against Deputy Duran and Sheriff Aden)

67.     Plaintiff incorporates paragraphs 1–44 as if set forth herein.

68.     Plaintiff brings this count in her capacity as the personal representative of the estate, under the Florida Wrongful Death Act, and for the benefit of the decedent's survivors and estate.

69.     Plaintiff alleges, as required by Fla. Stat. § 768.21, that the sole survivor of Mr. Fortson, and her relationship to him, is: Chantimekki Fortson, his mother.

70.     Ms. Fortson, as a parent of a minor child under the Act, asserts a claim for mental pain and suffering in her individual capacity. Fla. Stat. § 768.21(4).

71.     Ms. Fortson, as personal representative of the estate, seeks to recover all damages available under Fla. Stat. § 768.21.

72.     Deputy Duran's negligent and wrongful conduct, performed within the scope of his employment, directly caused Mr. Fortson's death.

73.     Sheriff Aden is liable for his deputy's conduct under the doctrine of *respondeat superior*, subject to Florida's sovereign immunity statute.

74.     Plaintiff will seek a claims bill for damages in excess of the statutory cap.

**Count 4:**
**Negligence**
**(Against Elan Apartments and Jane Doe)**

75.    Plaintiff incorporates paragraphs 1–44 as if set forth herein.

76.    This claim belongs to Mr. Fortson's estate, and Plaintiff brings this count in her capacity as the personal representative of the estate.

77.    Elan Apartments and Jane Doe owed a duty of care to Mr. Fortson, a lawful tenant, to exercise reasonable care when contacting law enforcement.

78.    Ms. Doe breached that duty by repeatedly providing unverified and speculative information that led to the fatal police encounter.

79.    As her employer, Elan Apartments is vicariously liable for Ms. Doe's conduct.

80.    Elan Apartments is also independently liable for its failure to train or supervise Ms. Doe regarding emergency protocols.

81.    Their negligence was a direct and proximate cause of Mr. Fortson's death and the resulting damages to his estate and family.

**Count 5:**
**Gross Negligence**
**(Against Elan Apartments and Jane Doe)**

82.    Plaintiff incorporates paragraphs 1–44 as if set forth herein.

83.    This claim belongs to Mr. Fortson's estate, and Plaintiff brings this count in her capacity as the personal representative of the estate.

84.    Jane Doe and Elan Apartments acted with reckless, utter disregard for the safety of Mr. Fortson by directing law enforcement to his apartment based on speculation and hearsay.

85.    Ms. Doe's statements created a false sense of urgency that contributed directly to the deadly response by law enforcement.

86.    These statements were not merely negligent, they were grossly negligent.

87.    Elan Apartments also acted with gross negligence in failing to train or supervise Ms. Doe.

88.    These Defendants' grossly negligent actions were the legal and proximate cause of Mr. Fortson's death.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court enter judgment in her favor and against all Defendants, jointly and severally, and award the following relief:

a.    Compensatory damages in an amount to be determined at trial for the wrongful death, pain and suffering, loss of companionship, emotional distress, and economic damages suffered by the Estate and surviving family members;

b.    Punitive damages against the Defendants for their willful, wanton, and reckless conduct;

c.    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable laws;

d.    Pre-judgment and post-judgment interest as allowed by law;

e.      Any other and further relief the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

DATED: May 6, 2025.

Respectfully submitted,

/s/ Brian H. Barr
Brian H. Barr (Fla. Bar No. 493041)
William F. Cash III (Fla. Bar No. 68443)
Chelsie L. Green (Fla. Bar No. 1008278)
**LEVIN, PAPANTONIO, PROCTOR,**
**BUCHANAN, O'BRIEN, BARR &**
**MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7000
Email: cgreen@levinlaw.com

/s/ Natalie Jackson
Natalie Jackson (Fla. Bar No. 646075)
**BEN CRUMP LAW, PLLC**
121 South Orange Ave.
Suite 1500
Orlando, FL 32801
Telephone: (407) 749-9702
Email: natalie@bencrump.com

*Counsel for Plaintiff*