IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHANTIMEKKI FORTSON, individually
and as Personal Representative of
the Estate of Roger Fortson,

      PLAINTIFF,

v.

SHERIFF ERIC ADEN, in his official
capacity; DEPUTY EDDIE DURAN,
in his individual capacity; CHEZ ELAN
FL PROPERTY, LLC, a Delaware
business entity; and JANE DOE,

      DEFENDANTS.

_____

Case No: 3:25-cv-00591-TKW-ZCB

Judge Wetherell

Magistrate Judge Bolitho

### CHEZ ELAN FL PROPERTY, LLC'S MOTION TO DISMISS COUNTS IV AND V OF PLAINTIFF'S COMPLAINT WITH PREJUDICE, OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT AND MOTION TO STRIKE

COMES NOW Defendant, CHEZ ELAN FL PROPERTY, LLC, a Delaware

business entity (hereinafter "Chez Elan"), by and through its undersigned counsel,

and pursuant to the Federal Rules of Civil Procedure 8(a), 10(b), 12(b), 12(e),

12(f)(2), and 39(a)(2), hereby files this Motion to Dismiss Counts 4 and 5 of

Plaintiff's Complaint With Prejudice, or in the Alternative, Motion for More Definite

Statement and Motion to Strike sham pleadings and demand for joint and several

liability, punitive damages, attorneys' fees and costs, and jury trial. As grounds therefor, Chez Elan states:

## **INTRODUCTION**

This lawsuit arises from a tragic incident in which Plaintiff's Decedent, Roger Fortson, was fatally shot by a sheriff's deputy after Mr. Fortson opened the door to his apartment while holding a pistol. In addition to asserting wrongful death claims against the sheriff and the deputy, Plaintiff seeks to hold Chez Elan, owner of the residential apartment complex, grossly and simply negligent based upon its employee's alleged failure to investigate a potential ongoing crime before contacting law enforcement.

There is no cause of action for mere negligent false reporting and there is no duty to investigate ongoing crimes; if the law imposed this duty, **landowners and property managers would be placed in an impossible predicament, Good Samaritans would be discouraged from rendering aid, the public would be afraid to seek police assistance, civilians would put themselves in danger, law enforcement investigations would be compromised, and courts would be flooded with lawsuits.[1] Florida does not impose a _duty_ to use of reasonable care**

---

[1] For example, if a property manager is informed of an ongoing dispute amongst tenants, and a tenant is injured during the property manager's investigation, the landlord may have breached a duty owed to the victim tenant; if there was no crime or the victim denied a crime, the landlord may have breached its duty to the perpetrator tenant. If the manager got hurt while investigating, the landlord would be exposed to a **third lawsuit** or worker's compensation claim.

when communicating with law enforcement; Ms. Doe's conduct is protected by qualified immunity, and her identity is statutorily protected.

## SUMMARY OF ARGUMENT

Notwithstanding the obvious procedural defects (failure to plead any facts necessary to state a cause of action), Counts 4 and 5 should be dismissed **with prejudice** for multiple independent reasons including: (1) **No Duty to Investigate Ongoing Crimes Before Notifying Law Enforcement or Prevent Officer Misconduct** (a landowner owes no legal duty to investigate reports of potential violent crime to determine whether a crime is ongoing); (2) **Qualified Immunity Bars Plaintiff's Allegations** (any civil claim based on an allegedly false or misleading police report is barred by qualified immunity); (3) **Lack of Causation** (Mr. Fortson's death was not proximately caused by Ms. Doe's report to the police); (4) **Improper Negligent Training and Supervision Claims** (Plaintiff cannot pursue a claim that arises out of negligence without underlying negligence); and (5) **Failure to State a Cause of Action** (Plaintiff fails to allege any facts, and there are no plausible facts pled to overcome Chez Elan's qualified immunity).

Additionally, Chez Elan moves to strike various allegations that are immaterial, improper, and/or **prohibited by law** (disclosure of Ms. Doe's name despite constitutional and statutory confidentiality), including Plaintiff's demand **joint and several liability** (abolished), **punitive damages** (procedurally and

substantively improper), **attorneys' fees and costs** (not permitted by statute or otherwise), and **jury trial** (Mr. Fortson waived this right).[2]

Since Plaintiff intends to expose Ms. Doe's identity, Chez Elan seeks an Order prohibiting disclosure Ms. Doe's identity; the law protects the identity of reporters to **protect public safety, preserve the integrity of law enforcement investigations, and uphold constitutional rights**. The safety concerns are valid; Chez Elan and management received **death threats** *before and after* flyers were placed on tenants doors demanding "ACCOUNTABILITY FOR THE KILLING OF SENIOR AIRMAN ROGER FORTSON" (this was done soon after Plaintiff's counsel held a national press conference demanding "accountability" for Chez Elan's "gross negligence" when it breached its "duty to act responsibility when calling law enforcement, … lit the fuse, … and load[ed Deputy Duran's] gun by speculation, hearsay, innuendo, and gossip."[3]

## FACTS

1. This lawsuit arises out of a tragic incident wherein Mr. Fortson was shot by a sheriff's deputy who was investigating a potential domestic dispute and felt

---

[2] Despite statutory and constitutional confidentiality of a reporter's identity, Plaintiff is attempting to verify Ms. Doe's "name through other means" and will "seek leave to amend this complaint as soon as it is ascertained." ECF No. 1 at ¶13; see also Fla. Const. art. 1, § 24(a); Fla. Stat. §§ 119.07, 119.071(2)(f), 365.171(12); 914.28.

[3] Plaintiff's counsel held a national press conference demanding that Elan Apartments be held "accountable" for Mr. Fortson's death on May 6, 2025 (the same day jurors began deliberating whether five police officers murdered Tyree Nichols). Two weeks later (May 20, 2020), flyers instructing Elan Apartments' tenants to "PACK THE COURT TO SHOW OKALOOSA COUNTY: THE PEOPLE DEMAND ACCOUNTABILITY FOR THE KILLING OF SENIOR AIRMAN ROGER FORTSON" were posted on every residents' front doors. See ECF No. 12.

threatened when Mr. Fortson answered the door with a pistol and "aggressive" stare. See generally, Pl. Compl., ECF No. 1; see also ECF No. 2 at 2-3, 17-18, 26.

2.  Plaintiff has filed a four Count Complaint alleging 42 U.S.C. § 1983 and Use of Excessive Use of Force against Deputy Duran (Count 1) , 42 U.S.C. § 1983 and Municipal Liability against Sheriff Aden (Count 2), Wrongful Death against Deputy Duran and Sheriff Aden (Count 3), Negligence against Chez Elan and "Jane Doe" (Count 4), and Gross Negligence against Chez Elan and Ms. Doe (Count 5).  ECF No. 1.

3.  Plaintiff claims that Chez Elan owed a duty "to exercise reasonable care in making emergency reports to law enforcement." *Id*. at ¶41.

4.  Plaintiff also seeks to hold Chez Elan vicariously liable for Ms. Doe's alleged failure to investigate ongoing crimes before notifying the police and "independently liable for its failure to train or supervise Ms. Doe regarding emergency protocols." *Id*. at ¶¶ 80, 87.

5.  The only facts pled that are relevant to Chez Elan are:

- Ms. Doe "called the Sheriff to report a domestic disturbance in Mr. Fortson's apartment" that was based upon "unverified concerns from another resident … Ms. Doe's statement was false." ECF No. 1 at ¶16-20.

- "When the dispatcher asked Ms. Doe if the residents were still actively fighting, she replied 'yes.' This information was not based on "any observation or confirmation." *Id*. at ¶21.

- Upon the deputy's arrival, "Ms. Doe escalated the situation by telling Deputy Duran that the current disturbance 'sounded like it was getting out of hand' and that a female caller 'sounded scared.'" *Id*. at ¶21.

- "Ms. Doe also recounted to Deputy Duran her vague recollection of a *prior* incident from *weeks earlier* where she *thought* she heard yelling and a slap. She admitted that *she did not know where the yelling had come* from but still identified Mr. Fortson's apartment as the source. Ms. Doe had not reported that earlier incident to authorities. *Id*. at ¶¶25-26.

- Without further investigation and based solely on *'fourth-hand' information* provided by Ms. Doe, Deputy Duran approached Apartment 1401. *Id*. at ¶27.

6. Plaintiff attaches and relies upon the Okaloosa County Sheriff's Office's

Administrative Investigative Report, which includes the following additional facts:

- The **tenant identified the apartment where she heard the disturbance** that had "been going on for like 15 or 20 minutes" and "sounded like it was starting to get out of hand … Like it started getting physical." ECF No. 2, at 2-3, 26.[4]

- Two weeks earlier, Ms. Doe "was walking by [Mr. Fortson's] apartment basically, on this side, and heard someone yell, like, shut the f**k up, like your stupid B word and all this other stuff, and [she] heard a slap like right after it, but [she] wasn't sure where it came from ..." Deputy Duran then asked Ms. Doe, "Which room is it" and she answered "1401," the apartment where the neighbor reported an ongoing dispute (and "frequent" sounds that led her to believe there were altercations]. ECF No. 1 at ¶ 25; ECF No. 2 at 4, 21 (16:29:02-16:29:34).

- **Deputy Duran did not hear "signs of a disturbance** as he was walking down the breezeway." ECF No. 2, at 15, •1; see also *id.* at 26.

---

[4] It was also noted that "Approximately thirty minutes before" calling the leasing office, the tenant heard Mr. Fortson "yelling" and "scuffle-like sounds. Mr. Fortson's "language," "tone," and comments (e.g., 'sick of you lying to my face … f**king liar'). ECF No. 2, at 9-10. The sounds were "constant" and, although the tenant did not hear a second voice, she believed "she was listening to a physical disturbance" coming from Mr. Fortson's apartment. *Id*.

- Deputy Duran "stood at [Mr. Fortson's] front door listening to ensure there was no disturbance or scuffle going on." *Id*. at 26, •2.

- Deputy Duran heard a voice that "possibly said, 'How the f**k the police' … knocked … second time, … loudly said, 'Sheriff's Office,' … **knocked on the door for the third time, … loudly said, 'Sheriff's Office**' … as the door initially opens, uh, I see him **moving forward. I tell him step back**, ... I see his eyes … uh, I saw aggression." *Id*. at 17, •3.

- Deputy Duran saw Mr. Forton holding a firearm with "… his hand and the elbow are slightly canted … his arm is slightly up … standard pistol grip … a red dot … **Immediately I thought, … I'm about to get shot**. ECF No. 2, 18 at •1-2.

7.  Plaintiff seeks to hold Defendants "jointly and severally liable" for damages (including punitive damages and attorneys' fees and costs) "on behalf of herself … *and for the benefit of Fortson's surviving family members*." ECF No. 1 at ¶¶ 4, "Prayer for Relief," (a-c).

8.  Notwithstanding the Lease Agreement Contract and jury waiver provision that Mr. Fortson voluntarily and knowingly signed, Plaintiff "demands a trial by jury on all claims so triable." ECF No. 1 at 16. The executed Lease Agreement Contract explicitly states that both parties to the Lease "voluntarily waive any right to a jury trial" related to "any lawsuit, claim, counterclaim, demand, action or cause of action" which is clearly contemplated by the instant case. ECF No. 13 at ¶ 40.

9.  Plaintiff improperly **commingles** allegations of Negligence (Count 4) and Gross Negligence (Count 5) against Chez Elan and Jane Doe.  in violation of Rule

10(b).  ECF No. 1 at Counts 4 and 5; *see also* Fed. R. Civ. P. 10(b) ("Each claim founded on a separate transaction or occurrence … must be stated in a separate count …").

10. Although the identity of anyone who reports a potential crime to law enforcement is confidential, Plaintiff intends to verify Ms. Doe's and "seek leave to amend this complaint as soon as it is ascertained." ECF No. 1 at ¶13; *see also* Fla. Const. art. 1, § 24(a); Fla. Stat. §§ 119.07, 119.071(2)(f), 365.171(12).

## LEGAL STANDARD FOR MOTION TO DISMISS

A party may seek dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). **A complaint must allege facts "across the line from conceivable to plausible**." *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (citations omitted) (emphasis added). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Franklin v. Curry*, 738 F. 3d 1246, 1251 (11th Cir. 2013) (citations omitted). Dismissal is proper when 'no construction of the factual allegations will support the cause of action.'" *Marshall Co. Bd. of Educ. v. Marshall Co. Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993).  The Supreme Court has stated, " … a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions … Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

## ARGUMENT

### A.  Plaintiff Seeks Impose Duties Upon Chez Elan That Are Contrary to Florida Law

Plaintiff wrongfully claims that Florida law requires the use of "reasonable care when contacting law enforcement." ECF No. 1, ¶¶ 41, 77.  She also claims Ms. Doe "breached that duty by repeatedly providing unverified and speculative information" law enforcement. *Id*. at ¶ 78. The law does not impose either duty upon a landowner or the general public.

### 1.  No Duty to Use Reasonable Care When Communicating With Law Enforcement

Florida law does not require the use "reasonable care in making emergency reports to law enforcement." *Valladares v. Bank of America Corp.*, 197 So. 3d 1, 11 (Fla. 2016). Instead, Florida provides qualified **immunity for "negligent" false police reports** and anonymity to those who communicate with law enforcement. *Valladares v. Bank of America Corp.*, 197 So. 3d 1, 11 (Fla. 2016). Florida's Supreme Court explained,

> **A cause of action for negligent reporting arises when there is incorrect reporting *plus* conduct on the part of the reporting party that rises to the level of the punitive conduct**. The type of conduct required to allege

punitive conduct must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

*Id.* (internal citations omitted) (emphasis added); *see also* Fla. Stat. §§ 395.171, 119.07. Thus, in order to overcome qualified immunity, "the wrongful act must be characterized by some circumstance of **aggravation, such as willfulness, recklessness, maliciousness, outrageous conduct, oppression or fraud**." *Am. Motors Corp. v. Ellis*, 403 So. 2d 459, 467 (Fla. 5th DCA 1981) (emphasis added); *see also Harapeti v. City of Miami Beach*, 2024 WL 5442846, *4 (S.D. 2024) ("**even making a false report intentionally to police (without more) does not carry the day … The wrongful act must be accompanied by some circumstance of aggravation** …" (internal quotation omitted) (emphasis added); *Pierson v. Orlando Reg'l Healthcare Sys.*, Inc., 2010 WL 1408391 (M.D. Fla. 2010) ("'Express malice' has been defined as 'ill will, hostility, and evil intention to injure and defame'") (citing *Demby v. English*, 667 So. 2d 350, 353 (Fla. 1stt DCA 1995)); *Lozada v. Hobby Lobby Stores, Inc.*, 702 Fed. Appx. 904 (2017) (insufficient evidence to overcome the qualified privilege where defendant's misrepresentations did not amount to "recklessness"); *Clarke v. Phelan*, 2017 WL 4326522, at *8 (S.D. Fla. Sept. 28, 2017) (allegations that the defendants "engaged in a scheme to harass and

bully anyone standing in the way … [and] concocted a story … in order to ensure that [the plaintiff] would be charged with a felony" were sufficient to state a cause of action for making  a false police report).

1. **No Duty to Use Reasonable Care When Communicating With Law Enforcement**

**Owners and managers of residential apartment complexes do not have a duty to investigate crimes on the premises**. *T.W. and K.W. v. Regal Trace, Ltd.*, 908 So. 2d 499, 503 (Fla. 4th DCA 2005) (no "duty to investigate alleged assault … committed by co-tenant on a tenant child;" the landowner's duty is to warn of foreseeable criminal conduct and provide safe housing). Also, investigating an ongoing crime can interfere with law enforcement investigations, create other problems such as obstruction or evidence tampering, and be dangerous.

The public is encouraged to report suspicious activity ("If you see something, say something") for the obvious policy reasons (e.g., safety, to encourage Good Samaritans to aide others, and employees to be able to perform their job without fear of liability). The Legislative intent is evidenced by **immunity that protects those who report potential criminal activity or wrongdoing** to law enforcement without malice or punitive conduct.  *Valladares v. Bank of America Corp.*, 197 So. 3d 1, 11 (Fla. 2016) (there is a "**qualified privilege for mistaken, but good faith reports of suspected criminal activity ... rooted in a public policy concern**"). The immunity

and anonymity designed to encourage people to report wrongdoing or perform their job duties without fear of liability is established in countless other contexts, including peer review, regulatory, fraud, abuse, etc.[5]

**B.    Qualified Immunity Bars Plaintiff's Allegations Against Chez Elan**

Florida's Supreme Court instituted a qualified privilege to protect false statements made by private individuals to the police. See *supra*. **"Even making a false report *intentionally* to police (without more) does not" establish the level of culpability necessary to pursue claims for making false police reports** … The wrongful act must be accompanied by 'some circumstance of aggravation ...'" *Id*., *4 (emphasis added). In other words, the **reporter must know of *and ignore* "a 'high probability' of injury to plaintiff" *and* the "conduct must be 'so reckless or wanting in care' as to amount to 'conscious disregard' for plaintiff's 'life, safety, or rights**." *Id*.; see also *Nodar v. Galbreath,* 462 So. 2d 803 (Fla. 1984) (the **"privilege is an absolute bar to liability**, except in the limited circumstances of where a showing of express malice is made"); *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1220 (Fla. 1986) (employer not liable for malicious prosecution when

---

[5] Other examples of immunity absent a high level of culpability such as punitive conduct or gross negligence include Florida Statutes, §§ 16.557 (crime stoppers organizations); 409.920 (Medicaid fraud); 440.1051 (workers compensation fraud); 415.1036 (abuse, neglect, or exploitation of vulnerable adult); 39.203 (child abuse, abandonment, or neglect); 766.101 (medical review); 768.095 (employer reference), 466.022 (consumer complaints); see also 28 U.S.C. § 2680 (law enforcement); 31 U.S.C. §§ 3729–3733 (False Claims Act); 5 U.S.C. § 2302 (whistleblower); 42 U.S.C. § 14501 (volunteers), 42 U.S.C. § 1791 (Good Samaritan); 42 U.S.C. § 11112 (HIPPA violations); 45 C.F.R. § 160.316 (HIPPA).

an employee, in good faith and without specifically requesting arrest, reported suspected criminal activity to law enforcement); *Fridovich v. Fridovich,* 598 So. 2d 65 (Fla. 1992) ("defamatory statements voluntarily made by private individuals to the police or the state's attorney prior to the institution of criminal charges are presumptively qualified privileged").

Plaintiff did not plead a single *fact* to demonstrate that Ms. Doe consciously disregarded or were indifferent to Mr. Fortson's life, safety. **The exhibit to Plaintiff's Complaint contains facts demonstrating that Ms. Doe acted in good faith**, including: (1) she called to convey a tenant's concerns about ongoing domestic dispute that "sounded like it was getting physical;" and (2) Ms. Doe overheard an altercation the vicinity of Mr. Fortson's apartment two weeks earlier.  The OSCO Investigation, attached as an Exhibit to Plaintiff's Complaint, refutes that Plaintiff's suggestion that Ms. Doe created a "false sense of urgency" by "directing law enforcement to his apartment." ECF No. 1 at ¶¶ 25, 84-85; see also ECF No. 2 at 4, 21 (16:29:02-16:29:34). Ms. Doe did not tell Deputy Duran that the altercation she heard two weeks earlier came from 1401; she told Deputy Duran that she did not know which apartment the noises came from. Ms. Doe answered, "1401" after Deputy Duran asked, "which room?" ECF No. 2 at 4, 21 (16:29:02-16:29:34).  Since Plaintiff cannot plead plausible facts to show that Ms. Doe consciously disregarded

or was indifferent to Mr. Fortson's life, safety, or rights, Counts IV and V should be dismissed with prejudice.

### C. Plaintiff's Complaint Fails to State Cause of Action For Negligence

The bare-boned conclusory allegations in Plaintiff's Complaint are insufficient to state a cause of action for negligence, gross negligence, or the conduct needed to circumvent the qualified privilege that immunizes liability arising out of Ms. Doe's communications with law enforcement.

### 1. Negligent Training and Supervision

Without underlying negligence, Plaintiff cannot pursue a cause of action based upon negligence (e.g., negligent training and supervision). Nonetheless, Plaintiff's Complaint lacks sufficient facts to state a cause of action for negligent hiring or supervision. *Bello v. Johnson*, 442 Fed. Appx. 477, 480 (11th Cir. 2011); *Banuchi v. City of Homestead*, 2021 WL 4459648, *5 (S.D. Fla 2022).

In order to state a claim of negligent supervision and retention, plaintiff must establish facts that the employer "should have foreseen, based on the employee's work history, that the employee would commit the current tort." *Bello*, 442 Fed. Appx.at 486 (11th Cir. 2011) (citing *Dickinson v. Gonxzalez*, 839 So. 2d 207, 713-14 (Fla. 3d DCA 2003)) (affirming dismissal of negligent supervision and retention claims because plaintiff "failed to allege any facts about previous misconduct by

[employee] that would have placed the [employer] on notice of possible future misconduct").

In *Banuchi*, the court found the following allegations insufficient state a cause of action for negligent training and supervision:

- Failure 'to meaningfully train and/or discipline officers with respect to the appropriate use of force during police-citizen encounters and the proper reporting of incidents that involved the use of force, even after learning of a steady increase in the number of sustained excessive force;
- Failure "to properly investigate suspected incidents of excessive force and unreasonable searches and seizures; and,
- Negligent "instructing, training, and supervisi[on of] defendant [employee] in the reasonable and safe use of firearms in the performance of his duties of a law enforcement officer …"

*Banuchi*, 2021 WL 4459648, *5 (deeming the above-mentioned causation allegations to be "'thread bare recitals of the elements of a cause of action, supported by mere conclusory statements' **that fall far short of the pleading standards required by the Rules**"). *Id.*

Allegations involving Chez Elan's alleged negligent training and supervision are more bare-boned than those rejected by the *Banuchi* and many other federal courts. *Bellow*, 442 Fed. Appx. 477 at 480; *Hardy*, 907 So. 2d at 660; *Harapeti*, 2024 5442846, *3. Since these facts cannot give rise to a plausible negligence claim, factually *or* legally, Count 5 should be dismissed with prejudice.

## 1. Gross Negligence

The Florida Legislature has defined gross negligence as conduct that is "so reckless or wanting of care that it constitutes a ***conscious* disregard or indifference to the life, safety, or rights** of persons exposed to the conduct. Fla. Stat. § 768.72(2)(b). A claim for gross negligence fails as a matter of law when it fails to state facts that show that defendant's actions constituted the type of "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent, that is required to support a claim for gross, as opposed to ordinary, negligence." *Turnbull v. Parris*, No. SX-15-CV-343, 2016 V.I. LEXIS 185, *6-8 (V.I. Super. Ct. Nov. 3, 2016) (citing *Yusuf v. Ocean Props.*, No. SX-15-CV-008, 2016 V.I. LEXIS 19, at *13 (V.I. Super. Ct. Mar. 7, 2016)).  Since the key element of gross negligence is the defendant's state of mind, the plaintiff must plead facts that can "reasonably be construed to show a state of mind indicating wanton or reckless indifference." *Leach v. Cruise Ship Excursions, Inc.*, No. ST-16-CV-506, 2019 V.I. LEXIS 86, at *22-24 (V.I. Super. Ct. Aug. 12, 2019) (dismissing claim of gross negligence against boat operator where the facts failed to show the wanton or reckless indifference); *Salkeld v. Marriott Ownership Resorts St. Thomas*, No. ST-16-CV-726, 2020 V.I. LEXIS 106, at *9 (V.I. Super. Ct. Sep. 11, 2020) (dismissing claims for gross negligence and punitive damages where plaintiff failed to allege conduct indicating the defendants "had a wanton, reckless disregard, or conscious indifference to the safety of its guests," knew "and ignored

a likelihood that injury would occur," or knew of "allegations of prior complaints"); *Brathwaite v. Xavier*, 71 V.I. 1089 (V.I. 2019); *Libien v. MIFR, Inc.*, No. ST- 15-CV-107, 2016 V.I. LEXIS 193, at *13-16 (V.I. Super. Ct. Nov. 28, 2016).

### D. Lack of Causation

Plaintiff offers no facts whatsoever to substantiate her allegations that Chez Elan's conduct proximately or legally caused Mr. Fortson's death. ECF No. 1, ¶¶ 80, 87. The Complaint alleges:

> 42. Mr. Fortson's death was a foreseeable and preventable result of the … misleading conduct of Chez Elan's staff.

> 43. As a direct and proximate result of the actions of all Defendants, Airman Roger Fortson wrongfully and unlawfully lost his life.

> 81. Their negligence was a direct and proximate cause of Mr. Fortson's death …

> 88. These Defendants' grossly negligent actions were the legal and proximate cause …

Neither Ms. Doe nor Chez Elan's conduct can reasonably be found to be the proximate cause of Mr. Fortson's death. "A defendant's conduct is a 'proximate cause' of a plaintiff's injury if 'it was not just any cause, but one with a sufficient connection to the result.'" *Chaudhry v. Aragon*, 68 F.4th 1161, 1170 n.12 (9th Cir. 2023) (quoting *Paroline v. United States*, 572 U.S. 434, 444 (2014)). "'Proximate cause is often explicated in terms of foreseeability,' such that the **proximate cause requirement 'preclude[s] liability in situations where the causal link between**

**conduct and result is so attenuated that the consequence is more aptly described as mere fortuity**.'" *Id.* (quoting *Paroline*, 572 U.S. at 445) (emphasis added). A defendant "is not liable for damages suffered by an injured party when some separate force or action is the active and efficient intervening cause of the injury. Such an intervening cause supersedes the prior wrong as the proximate cause of the injury by breaking the sequence between the prior wrong and the injury." *Tardif v. People for Ethical Treatment of Animals*, 829 F. Supp. 2d 1219, 1233 (M.D. Fla. 2001); *Harapeti* 2024 WL 5441846, at 4 (citations omitted) (**for there to be 'a natural and continuous sequence' between the false report and plaintiff's injury, it must 'reasonably be said that but for the [call] the injury would not have occurred**'"); *Chaudry*, 68 F. 4th at 1172 (surgeon failed to demonstrate that he would not have been harmed had the health department not published an erroneous investigative report).

In *Harapeti*, plaintiff's complaint did not establish proximate causation because was **"reasonable persons could not differ on the issue of whether" the defendant's false report led to plaintiff's arrest**.[6] In that case, defendant's manager "*falsely and intentionally* accus[ed]" plaintiff of causing a disturbance in order "to protect the bar's reputation of serving watered down drinks." *Harapeti*,

---

[6] The *Harapeti* complaint was dismissed with prejudice because plaintiff "failed to plead a proper claim despite three attempts" despite "'full notice' of her pleading deficiencies." *Harapeti*, 2024 WL 5441846, *4-5.

2024 WL 5441846, *1 (emphasis added). The plaintiff was arrested for resisting arrest without violence because she refused to give officers her identification and instead "decided to leave as ordered." *Id.* at 2. The court explained that explained:

> … the **telephone call cannot be said to have 'directly and in natural and continuous sequence produced or contributed substantially** to producing' plaintiff's arrest. First, plaintiff was not arrested for trespass; she was charged with resisting arrest without violence. Second, plaintiff's **arrest had nothing to do with her allegedly causing a disturbance** … she was arrested for resisting arrest in response to her defiance of the officers' orders. **Third, plaintiff was arrested across the street from the Bodega, after she got into an altercation with the officers separate and apart from her 'disturbance'** at the Bodega. It was that **separate altercation that was the legal cause of her arrest** … **On these allegations, reasonable persons could not differ on the issue of whether the Bodega manager could have reasonably foreseen that his phone call to police** would have led to plaintiff's actual charges …

*Id.* at *3-4 (citations omitted).

Like *Harapeti*, Mr. Fortson was not injured due to Ms. Doe's communications with the dispatcher or Deputy Duran. Deputy Duran independently investigated the suspicions of domestic violence while walking down the breeze way and again when he "stood at the front door listening to ensure there was no disturbance or scuffle going on." ECF 2 at 15. It was not foreseeable to Ms. Doe or Chez Elan that Mr. Fortson would greet a sheriff's deputy with holding a firearm with a "pistol grip," "red optic" light, "slightly canted" elbow, and "aggressive look in his eyes." ECF No. 2 at 17-18. It was not foreseeable that Mr. Fortson would be shot during this encounter. Since Plaintiff cannot reasonably state a plausible cause of action that

arises out of conduct that is privileged and immune from suit, this Honorable Court should dismiss Plaintiff's Complaint against Chez Elan with prejudice.

## ALTERNATIVE MOTION TO STRIKE SCANDALOUS AND IMPROPER ALLEGATIONS AND DEMAND FOR JOINT AND SEVERAL LIABILITY, PUNITIVE DAMAGES, ATTORNEYS' FEES AND COSTS, AND JURY TRIAL

This Court has broad discretion under Rule 12(f) to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Sanders v. Trump*, 2022 WL 18830740 (N.D. Fla. 2022). "'[I[mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

### A. Sham Pleading

Plaintiff's Complaint contains numerous extraneous allegations as well as improper legal briefing at the "Introduction" paragraph (including "unconstitutional actions by both law enforcement and the apartment complex where he resided"), ¶¶ 9-10 (identifying, by name, Chez Elan's registered agent and manager), ¶ 13 ("corporate defendant … refused to identify" Ms. Doe—*in violation of her privacy*

*rights and Florida law*[7]), pg. 15 (seeking to hold Defendants "jointly and severally liable"), ¶¶ 32-33 ("Plaintiff now seeks justice"); ¶ 44 (as a "direct and proximate result of all Defendants' actions, *Airman Roger Fortson wrongfully and unlawfully lost his life*"); ¶¶ (a)(c) (seeking punitive damages and attorneys' fees); and Demand for Jury Trial.  ECF No. 1.

## B. Joint and Several Liability is Abolished

Plaintiff's "prayer for relief" improperly seeks to impose joint and severally liability upon Defendants. ECF No. 1 at 16). Joint and several liability was abolished by the enactment of Florida Statute § 768.81(3), which states, "[i]n a negligence action, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and **not on the basis of the doctrine of joint and several liability**." Fla. Stat. § 768.81(3) (emphasis added); see also *Carlson v. Armstrong World Industries, Inc. etc., et al.*, 693 F. Supp. 1073 (S.D. Fla. 1987); *F.D.I.C. v. Bayer*, 2014 WL 2919939, *2 (M.D. Fla. 2014). Since Chez Elan cannot be held jointly and severally liable for any other Defendants' acts or omissions, this provision of the Complaint should be stricken.

## C. Punitive Damages Are Not Procedurally or Substantively Proper

Florida Statute Section 768.72(1) prohibits any claim for punitive damages unless "there is a reasonable showing by evidence in the record or proffered by the

---

[7] See Fla. Stat. §§ 119.07(2); 119.071(2)(f); 365.171(12).

claimant which would provide a reasonable basis for recovery of such damages." Fla. Stat. § 768.81. Claims for punitive damages that are not authorized under the statutory standard must be dismissed or stricken. *Kraft General Foods, Inc. v. Rosenblum*, 635 So. 2d 106 (Fla. 4th DCA 1994). In this case, the Plaintiff has not proffered any such evidence and this Honorable Court has not granted Plaintiff entitlement to seek punitive damages. Accordingly, paragraph (b) of Plaintiff's Prayer for Relief should be stricken. ECF No. 1 at 15, ¶(a).

### D. Attorneys' Fees and Costs are Not Recoverable Against Chez Elan

Plaintiff seeks to impose "Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable laws." ECF No. 1 at 15, ¶(a). Chez Elan is not alleged to have violated 42 U.S.C. § 1988 and cannot be subject to attorneys' fees or costs under this statute. Further, Florida's Wrongful Death Act states, "Attorneys' fees and other expenses of litigation *shall* be paid by the personal representative and deducted from awards to the survivors and the Estate …" Fla. Stat. § 768.26 (emphasis added). Since Chez Elan is not subject to 42 U.S.C. § 1988, and attorneys' fees and costs are precluded by the Florida Wrongful Death Statute, Plaintiff's demand for these damages should be stricken.

## <u>MOTION FOR MORE DEFINITE STATEMENT</u>

Alternatively, pursuant to Federal Rule of Civil Procedure 12(e), Plaintiff should be ordered to amend her complaint to plead sufficient facts to state a plausible

cause of action, as explained *supra*. Also, it is unclear what relief is sought since the Complaint fails to identify Mr. Fortson's statutory survivors ("She brings this action … for the benefit of Fortson's surviving family members"). ECF No. 1, ¶ 4; *id.* at "Prayer for Relief," 15(a).

## <u>CONCLUSION</u>

Counts 4 and 5 should be dismissed with prejudice because Ms. Doe's communications with law enforcement are privileged and not the proximate cause of Mr. Fortson's death. The minimal facts pled demonstrate that Ms. Doe acted in good faith, not with malice or a known disregard for Mr. Fortson's and the allegations show that her discussions were made in good faith, rather than a conscious disregard or indifference to Mr. Fortson's life, safety, or rights. There is no plausible scenario in this circumstance where the Plaintiff can present sufficient evidence to a jury to demonstrate that Ms. Doe or Chez Elan's actions were the proximate cause of Mr. Fortson's death.

**WHEREFORE**, Defendant, CHEZ ELAN FL PROPERTY, LLC, a Delaware business entity, respectfully requests this Honorable Court enter an Order granting this Motion and

- dismissing Counts 4 and/or 5 with prejudice;
- deeming Ms. Doe's communications with the police privileged; and,
- finding, as a matter of law, that Chez Elan, its employees, agents, and apparent agents are immune from any causes of action against

that arise out of the incident that is the subject f Plaintiff's Complaint.

Alternatively, Chez Elan respectfully requests this Honorable Court enter an Order

- compelling Plaintiff to provide state a more definite statement that appropriately addresses the issues and deficiencies raised in this Motion;
- striking the following paragraphs: "Introductory" (including "unconstitutional actions by both law enforcement and the apartment complex where he resided"), ¶¶ 9-10 (identifying Chez Elan's agents), ¶ 13 ("corporate defendant … refused to identify" Ms. Doe), ¶¶ 32-33 ("Plaintiff now seeks justice"), ¶ 44 ("Airman Roger Fortson wrongfully and unlawfully lost his life"), ¶¶ (a)&(c) (seeking punitive damages and attorneys' fees), pg. 15 (seeking to hold Defendants "jointly and severally liable"), and Demand for Jury Trial.  ECF No. 1.
- involving the names of Chez Elan's agents or employees (¶¶ 9-10, 13), joint and several liability (*id.* at "Prayer for Relief"), improper damages (punitive, attorneys' fees, and costs; *id.* at ¶(b)(c)), and Plaintiff's jury trial demand;
- prohibiting Plaintiff from identifying Jane Doe (this will be briefed separately); and,
- awarding any additional relief deemed just and appropriate.

## LOCAL RULE 7.1 (B) and (C) CERTIFICATION

Pursuant to Local Rule 7.1(D), no certificate of conferral is required since this Motion will determine the outcome of the case.

## <u>LOCAL RULE 7.1 (F) CERTIFICATION</u>

Pursuant to Local Rule (F), the undersigned certifies that this Motion and memorandum of law does not exceed 5,700 words combined, as reported by the word-processing system utilized.

Respectfully submitted this <u>14th</u> day of July 2025.

/s/ Bradley H. Rowe
Bradley H. Rowe (FL Bar No. 72708)
**COLE, SCOTT & KISSANE, P.A.**
890 South Palafox Street, Suite 200
Pensacola, FL 32502
Telephone (850) 483-5931
Facsimile (850) 438-6969
E-mail: Bradley.rowe@csklegal.com

*Counsel for Defendant Chez Elan FL Property, LLC*