IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHANTIMEKKI FORTSON, individually
and as Personal Representative of
the Estate of Roger Fortson,                    Case No. 3:25-cv-00591-TKW-ZCB

      PLAINTIFF,

v.

SHERIFF ERIC ADEN, in his official capacity;
DEPUTY EDDIE DURAN, in his individual capacity;
CHEZ ELAN FL PROPERTY, LLC,
a Delaware business entity; and JANE DOE,

      DEFENDANTS.

_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO CHEZ ELAN FL PROPERTY, LLC'S MOTION TO DISMISS COUNTS IV AND V AND MOTION TO STRIKE

      Plaintiff Chantimekki Fortson, as Personal Representative of the Estate of Roger Fortson, respectfully submits this memorandum in opposition to Defendant Chez Elan FL Property, LLC's Motion to Dismiss Counts IV and V of her Complaint (EFC 1) and Motion to Strike (EFC 14).

## I.    INTRODUCTION

      This case arises from the tragic, unnecessary killing of Senior Airman Roger Fortson, an active-duty U.S. Air Force airman lawfully residing alone in his own home, by an Okaloosa County sheriff's deputy who was responding to a 911 call that never should have been made in the first place. The call, placed by a leasing agent employed by Defendant Chez Elan FL Property, LLC ("Chez Elan"), was not based on personal observation, objective facts, or even verified reports of danger.

      Instead, the leasing agent, Jane Doe, did not simply notify the police of something she observed, she affirmatively mislead the dispatch and the responding deputy by: 1) relaying

1

second and third-hand hearsay about an alleged violent dispute in Mr. Fortson's apartment; 2) falsely claiming there was an ongoing physical altercation in Mr. Fortson's apartment when she saw and heard nothing; and 3) speculated about a prior "slap" she could not attribute to any specific unit, only to later identify Mr. Fortson's home as the source. (Compl. ¶¶ 21-27). All of this was false, unreasonable, and reckless.

Jane Doe's statements to dispatch and Deputy Duran served to amplify a vague, unconfirmed third-party report into a declaration of an active, violent domestic fight in Apartment 1401, Mr. Fortson's apartment. When in truth, Mr. Fortson, who lived alone, was in his apartment alone.

Minutes after Jane Doe's report to Deputy Duran, Mr. Fortson would be shot six times by law enforcement in his doorway.

Defendant attempts to mischaracterize this lawsuit as an effort to impose liability on a landlord merely for calling the police, or for allegedly failing to "investigate" suspected criminal activity. That is not the issue in this case. Plaintiff does not claim that Jane Doe or Chez Elan had a duty to investigate suspected violence before contacting law enforcement. Nor does Plaintiff seek to penalize good-faith efforts to ensure tenant safety. Rather, this case concerns the affirmative decision by Jane Doe, an agent of the apartment complex, to provide law enforcement with false, inflammatory, and speculative information that she either knew or should have known was unverified. Worse, she repeated and expanded those falsehoods in person when the deputy arrived, further escalating the situation with misleading and prejudicial comments that suggested prior acts of violence without any foundation.

Plaintiff's claims for negligence and gross negligence against Chez Elan are firmly grounded in well-established Florida law, which holds employers accountable for the reckless

conduct of their agents and for failing to supervise or train employees whose actions foreseeably endanger others. Far from being a "good-faith" reporter of potential crime, Jane Doe's conduct was careless, embellished, and dangerous. Her statements directly led law enforcement to treat the situation as one involving an imminent threat of violence. The foreseeable consequence, particularly in Florida, where lawful firearm ownership is common and police-civilian encounters are disproportionately fatal for Black men, was the use of deadly force against an innocent tenant.

Chez Elan now asks the Court to immunize it from any liability by misapplying Florida's qualified privilege for reporting suspected crimes and reframing the Plaintiff's claims as a radical overreach. But Florida law is clear: the qualified privilege does not extend to knowingly false or recklessly misleading reports, nor does it preclude liability for grossly negligent training and supervision. The Complaint alleges facts that plausibly support both theories of liability, and any questions of causation or foreseeability must be reserved for the jury.

Finally, Defendant's motion to strike multiple portions of the Complaint is procedurally disfavored and legally unsupported. The challenged allegations are relevant, material, and appropriately pled. For these reasons, and as set forth more fully below, Defendant Chez Elan's Motion to Dismiss Counts IV and V and Motion to Strike should be denied in their entirety.

## II.    <u>FACTUAL BACKGROUND</u>

On May 3, 2024, Senior Airman Roger Fortson, a 23-year-old active-duty member of the United States Air Force, was lawfully residing alone in Apartment 1401 at the Elan Apartments in Fort Walton Beach, Florida. At approximately 4:30 p.m., while speaking via FaceTime with his girlfriend, Mr. Fortson was shot and killed by Deputy Eddie Duran of the Okaloosa County Sheriff's Office. (Compl. ¶¶ 5, 15–16). Mr. Fortson had committed no crime. He was alone in his

apartment, unarmed at the time of the 911 call, and in lawful possession of a firearm when he answered the door. (Compl. ¶¶ 16, 31-32; Exhibit A-IA Report, pgs. 26-29).

The fatal shooting was triggered by a false and reckless report to law enforcement made by Jane Doe, a leasing agent employed by Defendant Chez Elan FL Property, LLC. Jane Doe did not witness any altercation herself. Instead, she acted on a vague report from another tenant, who likewise did not witness any violence, and nevertheless informed the 911 dispatcher that there was an ongoing domestic disturbance in Mr. Fortson's apartment. (Compl. ¶¶ 17–22; Exhibit A-IA Report at pgs. 4, 11-12).

When asked by dispatch whether the residents were "still actively fighting," Jane Doe affirmatively stated yes, despite having no personal knowledge and no visual or audible confirmation of any fight. (Compl. ¶ 22; Exhibit A-IA Report at pgs. 4, 11-12). She later met Deputy Duran on-site and escalated the situation further by claiming that the conflict "sounded like it was getting out of hand" and that the situation "happened frequently". She also misleadingly stating that a "female caller sounded scared." (Compl. ¶ 24; Exhibit A-IA Report at pgs. 4, 11-12).

Jane Doe then told the deputy about an incident from "two weeks ago," in which she allegedly heard yelling and a "slap," but admitted she did not know where it came from. Nonetheless, she identified Mr. Fortson's apartment as the location of the prior incident, falsely implying a pattern of domestic violence. (Compl. ¶ 25–26; Exhibit A-IA Report at pgs. 4, 11-12). She had never reported this prior incident to law enforcement until the day of the shooting. (Exhibit A-IA Report at pgs. 4, 11-12).

Relying solely on Jane Doe's statements, Deputy Duran approached Apartment 1401. He knocked without announcing himself, then repositioned out of view of the peephole. (Compl. ¶¶

28–29; Exhibit A-IA Report at pgs. 3-8). Mr. Fortson, unaware of who was at the door and hearing no identification, informed his girlfriend on FaceTime that he would retrieve his legally owned firearm. (Compl. ¶¶ 30–31). When he opened the door, the firearm was pointed downward and away from the doorway, and his left hand was raised in a clear posture of non-aggression. (Compl. ¶ 32–34; Exhibit A-IA Report at pgs. 3-8). Nonetheless, Deputy Duran opened fire within seconds, striking Mr. Fortson six times. [(Compl. ¶¶ 33–34; Exhibit A-IA Report at pgs. 3-8).

After the shooting, Mr. Fortson said, "It's over there. I don't have it," referring to the firearm, which had fallen to the floor. (Compl. ¶ 35; Exhibit A-IA Report at pgs. 3-8). He received no immediate medical aid. (Compl. ¶ 36). The entire incident was witnessed in real time by Mr. Fortson's girlfriend, who remained connected via FaceTime. (Compl. ¶ 30).

An Internal Affairs investigation by the Okaloosa County Sheriff's Office found that Deputy Duran's use of deadly force was objectively unreasonable and violated the agency's Response to Resistance Policy. (Compl. ¶ 37; Exhibit A-IA Report at 29). The report concluded that Mr. Fortson was standing in his doorway with the firearm pointed downward and did not make any movement to raise, point, or threaten the deputy. (Compl. ¶ 37; Exhibit A-IA Report at 26–29). Deputy Duran was fired from the Sheriff's Office and later criminally charged with manslaughter with a weapon under Florida law. (Compl. ¶ 40).

Plaintiff alleges that Chez Elan breached its duty of care to Mr. Fortson as a lawful tenant by failing to train or supervise Jane Doe properly, and by acting through its agent to inject false and inflammatory information into a law enforcement response that had foreseeable, fatal consequences. (Compl. ¶¶ 41–44, 75–88). Although Plaintiff requested Chez Elan's emergency communication policies during pre-litigation, Defendant has failed to produce them. Plaintiff

anticipates that these documents will further demonstrate Chez Elan's lack of protocols, training, and oversight. These are facts that will be explored in discovery.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This does not require detailed factual allegations, but "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

At this stage, all well-pleaded allegations must be accepted as true and construed in the Plaintiff's favor. *Chapman v. U.S. Postal Serv.,* 442 F. App'x 480, 482 (11th Cir. 2011). The Complaint need only allege facts that, if proven, would entitle the Plaintiff to relief. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012). Where questions of causation, foreseeability, or privilege arise, those are generally fact issues for the jury. *Tardif v. People for the Ethical Treatment of Animals*, 829 F. Supp. 2d 1219, 1233 (M.D. Fla. 2011).

### IV.    ARGUMENT

### A.  FLORIDA LAW IMPOSES A DUTY NOT TO INSTIGATE POLICE ENCOUNTERS RECKLESSLY

Defendant Chez Elan wrongly asserts that Plaintiff's negligence theory depends on a novel and unsupported duty that landlords must investigate suspected domestic violence before calling the police, or that they are responsible for preventing officer misconduct. That is not Plaintiff's position, nor is it the basis of liability pled in the Complaint.

Plaintiff alleges that Jane Doe made multiple false statements to law enforcement without any firsthand knowledge and that Chez Elan failed to supervise or train her. These include falsely

confirming "active fighting," falsely attributing past violence to Mr. Fortson's apartment, and misleadingly suggesting a female caller was scared. These actions directly escalated the encounter that ended in Mr. Fortson's death. This is far beyond mere reporting; it is reckless, gross, and flagrant conduct that evidences a conscious indifference to consequences.

1. <u>The Duty at Issue Is Not to Investigate Crime, It Is to Refrain from Affirmatively Creating Foreseeable Danger</u>

Florida law imposes a duty on all persons, including landlords and their agents, not to engage in conduct that creates a foreseeable risk of harm to others. *Williams v. Davis,* 974 So. 2d 1052, 1056 (Fla. 2007); *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503–04 (Fla. 1992). Plaintiff is not asking this Court to hold landlords liable for failing to act, but for their affirmative acts that create danger.

Here, Jane Doe did not simply notify the police of something she observed. She affirmatively misled dispatch and the responding deputy:

1. She relayed unverified hearsay from a tenant who admitted not seeing any violence;

2. Claimed the situation "happened frequently" and "sounded like it was getting out of hand";

3. She falsely claimed there was "active fighting" when she saw and heard none and the reporting tenant admitted to not seeing any violence;

4. She implied a history of domestic violence in Mr. Fortson's home by referencing hearing a prior "slap" and linked it to Mr. Fortson's apartment, despite admitting she wasn't sure where it came from.

Florida law recognizes that a person who provides misleading or false information that foreseeably leads to harm can be held liable, even without a legal duty to investigate or physically intervene. *See Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016) (Bank

held liable where employee made false robbery report, triggering armed police response. No duty to investigate, but duty not to affirmatively mislead.)

Accordingly, Plaintiff does not allege that Jane Doe had a duty to investigate independently or that Chez Elan was obligated to prevent officer misconduct. Instead, Plaintiff asserts that the false and inflammatory report itself was the breach, not the failure to dig deeper.

2. Landlords May Be Liable for Failing to Supervise Agents Whose Affirmative Conduct Creates Risk

Florida law also recognizes direct liability for negligent training and supervision, not for failing to police the police, but for failing to control one's employees. See: *Malicki v. Doe*, 814 So. 2d 347 (Fla. 2002) (An employer's failure to adequately train and supervise employees can constitute negligence where it is foreseeable that the lack of training could result in harm.)

Chez Elan's agent was authorized to act as its representative and had direct access to both tenants and law enforcement. Her conduct of relaying false and inflammatory information about tenants was plainly foreseeable and preventable through basic training or policy. Plaintiff is not asking the Court to turn landlords into law enforcement agencies only to hold them accountable when they and/or their agents act recklessly and falsely in a way that gets their tenants killed.

3. Public Policy Does Not Immunize Private Actors Who Trigger Law Enforcement Violence Through False Reports

Defendant's argument invites dangerous consequences. If a landlord can falsely report a tenant as violent without training, oversight, or consequence and then escape liability by blaming police, then no tenant is safe. Florida law does not permit that. Indeed, courts have made clear that public policy supports holding those accountable who set in motion foreseeable harm by affirmatively acting with disregard for the truth. See *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1220 (Fla. 1986) (A person who initiates or instigates a criminal investigation based on

false or recklessly made statements cannot shield themselves from liability simply because an arrest warrant was later issued).

Plaintiff does not allege that Chez Elan or Jane Doe had a duty to investigate ongoing crimes or control law enforcement. Plaintiff alleges that Jane Doe's false report created a foreseeable zone of danger that directly led to Mr. Fortson's death and that Chez Elan failed to prevent that outcome through any meaningful training or oversight. The duty to refrain from affirmative reckless conduct is well-established in Florida law and forms a valid basis for negligence and gross negligence liability.

**B.  QUALIFIED PRIVILEGE DOES NOT SHIELD CHEZ ELAN OR JANE DOE FROM LIABILITY FOR FALSE AND RECKLESS MISSTATEMENTS**

Chez Elan wrongly asserts that all civil claims against it are barred by Florida's qualified privilege for reporting suspected crimes to law enforcement. Florida Law recognizes a duty not to instigate police encounters recklessly. While *Valladares v. Bank of America Corp.,* 197 So.3d 1, 11 (Fla.2016) provides a qualified privilege for mistaken but good-faith reports to police, it expressly allows tort liability where there is gross negligence or reckless disregard, all of which are specifically and plausibly alleged in this case.

1.  Florida's Qualified Privilege for Crime Reporting Is Not Absolute

Under Florida law, statements made to law enforcement about suspected criminal activity are conditionally privileged, meaning the speaker is protected from defamation or tort liability only if the statement is made in good faith and without malice. See *Nodar v. Galbreath*, 462 So. 2d 803, 810 (Fla. 1984); *Linafelt v. Beverly Enters.-Fla., Inc.*, 745 So. 2d 386, 389 (Fla. 1st DCA 1999); *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016).

Here, Plaintiff does not dispute that Jane Doe was reporting to the police. Instead, Plaintiff alleges that she did so falsely, speculatively, and with reckless disregard for the truth,

including:

1) Claiming "active fighting" when none was observed;

2) Claiming the situation "happened frequently" and "sounded like it was getting out of hand";

3) Falsely stating a frightened woman had called when no such call occurred;

4) Suggesting a history of violence in the apartment without confirming the source;

5) Identifying Mr. Fortson's apartment as the location despite a lack of firsthand evidence.

These are not protected statements. They are affirmative misrepresentations made in a context where the natural and probable result was a high-risk, armed police response.

The Internal Affairs Report confirms that this police response, prompted by Jane Doe's statements, was unjustified. The shooting of Mr. Fortson occurred within 90 seconds of Deputy Duran's arrival, and the Okaloosa County Sheriff's Office concluded that the use of force was excessive and violated department policy. These findings further support Plaintiff's claim that the danger set in motion by Jane Doe's misstatements was not only foreseeable, but it was also actualized.

2. <u>Public Policy Does Not Support Absolute Immunity for Reckless Civilian Reports</u>

Chez Elan's argument, if accepted, would dangerously expand Florida's qualified privilege into a form of de facto immunity, allowing landlords and corporate agents to make false claims to police without consequence. Florida courts have rejected such a policy.

In *Valladares*, the Florida Supreme Court made clear that public policy does not protect malicious or reckless actors, even when they are reporting suspected crime. Moreover, imposing liability where false reports foreseeably lead to police violence, especially in the context of historically disproportionate use of force against Black residents, serves a compelling public

interest. The law must discourage private actors from using police response as a weapon.

Plaintiff's claims are not barred by Florida's qualified privilege for crime reporting. The Complaint alleges that Jane Doe's statements were made with reckless disregard for the truth and that Chez Elan failed to train or supervise her in a way that could have prevented this fatal outcome. Under *Valladares*, these allegations are sufficient to defeat the privilege, especially at the pleading stage.

## C. PLAINTIFF HAS PLAUSIBLY ALLEGED JANE DOE'S FALSE REPORT WAS A PROXIMATE AND FORESEEABLE CAUSE OF AIRMAN FORTSON'S DEATH

Defendant Chez Elan argues that Jane Doe's conduct was not the proximate cause of Roger Fortson's death, claiming instead that Deputy Duran's use of force was a superseding cause. This argument misstates Florida law. Proximate cause exists when a defendant's conduct foreseeably creates a risk of harm that actually occurs, even if intervening acts contribute to the harm. Here, Jane Doe's affirmative falsehoods, along with her inflammatory embellishments, directly shaped the nature of the police response, foreseeably causing a high-risk police encounter which escalated a benign situation into a deadly one. Florida law recognizes this as sufficient to satisfy proximate cause at the pleading stage.

1. Under Florida Law, Proximate Cause Is a Fact Question for the Jury

The standard of proximate causation in Florida is well established: "The key to proximate cause is foreseeability." *Vining v. Avis Rent-A-Car Systems, Inc.,* 354 So. 2d 54, 56 (Fla. 1977). As the Supreme Court of Florida stated in *Gibson v. Avis Rent-A-Car System, Inc.,* 386 So. 2d 520, 522 (Fla. 1980): "If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact." Therefore, whether a superseding act broke the chain of causation is a factual question not suitable for resolution on a motion to dismiss. *Vining v. Avis Rent-A-Car Sys., Inc.*, 354 So. 2d

54, 56 (Fla. 1977).

Indeed, the Supreme Court has issued "directions to the appellate courts of this state" that issues of proximate causation almost always are for the jury. *Welfare v. Seaboard Coast Line R. Co.,* 373 So. 2d 886, 888 (Fla. 1979).

In proper cases, even intervening conduct which is intentional, even criminal, may be foreseeable, if the Defendant should have known that his negligence would create the opportunity for such conduct.[1]

At the other end of the spectrum, an intervening cause was unforeseeable only if it was "highly unusual, extraordinary, or bizarre." *Stahl v. Metropolitan Dade County,* 438 So. 2d 14, 21 (Fla. 3d DCA 1983). *See Palm Beach County Bd. of County Comm'rs v. Salas,* 511 So. 2d 544, 547 (Fla. 1987) ("bizarre, unusual"); *Department of Transp. v. Anglin,* 502 So. 2d 896, 899 (Fla. 1987) ("bizarre"). Thus, as the Supreme Court indicated in *McCain v. Florida Power Corp.,* 593 So. 2d 500, 504 (Fla. 1992), "proximate causation generally must be left to the fact-finder to resolve.. . . [W]here reasonable persons could differ as to whether the facts establish proximate causation— *i.e.,* whether the *specific* injury was genuinely foreseeable or merely an improbable freak—then the resolution of the issue must be left to the fact-finder."

Plaintiff has alleged that Jane Doe's statements caused law enforcement to approach Mr. Fortson as if he were a dangerous domestic abuser. This is precisely the harm her reckless misstatements made likely and exactly the kind of causation Florida law describes.

2.  The Police Use of Force Was Not an Unforeseeable Superseding Cause

---

[1] *See Nicholas v. Miami Burglar Alarm Co.,* 339 So. 2d 175, 177 (Fla. 1976); *Holley v. Mt. Zion Terrace Apartments, Inc.,* 382 So. 2d 98, 100 (Fla. 3d DCA 1980); *Werndli v. Greyhound Corp.,* 365 So. 2d 177 (Fla. 2d DCA 1978); *Rosier v. Gainesville Ins. Associates, Inc.,* 347 So. 2d 1100 (Fla. 1st DCA 1977); *Rotbart v. Jordan Marsh Co.,* 305 So. 2d 255 (Fla. 3d DCA 1974).

Defendants argue that Deputy Duran's decision to shoot Mr. Fortson was an unforeseeable independent act. That argument fails under Florida law. A superseding cause only breaks the chain of proximate causation if it is "so unforeseeable and extraordinary that it operates to cut off the defendant's liability." See *Tardif v. PETA*, 829 F. Supp. 2d 1219, 1233 (M.D. Fla. 2011).

In this case, the very purpose of Jane Doe's call was to bring law enforcement to Mr. Fortson's apartment under the belief that a violent disturbance was occurring. That the police would approach the apartment aggressively, with guns drawn, and respond to a perceived threat with deadly force was not just foreseeable, it was tragically predictable.

Moreover, the Internal Affairs Report confirms that Mr. Fortson was standing in his doorway, visibly holding a legally-owned firearm pointed downward, while using his left hand to operate a phone. Body camera footage shows that he opened the door slowly, made no sudden movements, and was inside his home. Nevertheless, he was shot almost immediately, within 90 seconds of the deputy's arrival.

The Sheriff's Office ultimately found that Deputy Duran violated use-of-force policy and that the shooting was unjustified. These facts support Plaintiff's argument that Jane Doe's misrepresentations directly led to Mr. Fortson's death, and that the use of force was far from being an unforeseeable anomaly; it was a natural and foreseeable result of her false escalation.

3. <u>Racialized Foreseeability Strengthens the Proximate Cause Analysis</u>

Plaintiff has also alleged that Mr. Fortson was a young Black man, legally armed, alone in his home, and that Jane Doe's report falsely painted him as a violent threat. In the cultural and legal context of Florida, where lawful gun ownership and Stand Your Ground laws interact with racially disparate law enforcement outcomes, it was especially foreseeable that a false report

about an armed Black man would escalate into a fatal encounter.

This racialized foreseeability was recognized in *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 673 (4th Cir. 2020), where the Court noted the disproportionate danger that police encounters pose to Black men. That foreseeable risk is part of the proximate cause analysis in this case.

Proximate cause in Florida turns on whether the Defendant's conduct created a foreseeable risk of harm and whether that harm actually occurred. Jane Doe's misrepresentations painted Mr. Fortson as a violent threat and led to a predictably aggressive police response. Her conduct was not a remote or tangential cause; it was the proximate, triggering event that led to an unnecessary and tragic death. This is a question for the jury, not grounds for dismissal.

## D.  PLAINTIFF HAS PLAUSIBLY ALLEGED NEGLIGENCE AND GROSS NEGLIGENCE AGAINST CHEZ ELAN

Plaintiff's claim against Chez Elan is not limited to vicarious liability. It also asserts direct negligence in failing to train or supervise Ms. Doe regarding the importance of accuracy and restraint when interacting with law enforcement regarding tenant conduct. Counts IV and V allege that Defendant Chez Elan, through its employee Jane Doe, breached its duty of care and acted with gross negligence by affirmatively providing law enforcement with false, speculative, and inflammatory information about a nonexistent domestic disturbance in Roger Fortson's apartment. This was not a good-faith report of concern. Jane Doe never observed a fight, never saw a victim, and had no basis to name Mr. Fortson's unit. Yet she told dispatch that the residents were "still actively fighting," implied that a frightened woman had called in (when none had) and volunteered an unverifiable incident involving a "slap" from two weeks earlier, falsely suggesting prior violence.

While Florida law recognizes a qualified privilege for mistaken police reports, it

expressly allows tort liability in cases of "gross and flagrant conduct" or "conscious indifference to consequences." Furthermore, Florida law permits negligence and gross negligence claims to proceed where a defendant's conduct foreseeably causes harm and reflects a reckless disregard for others. See *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016); *Am. Motors Corp. v. Ellis*, 403 So. 2d 459, 467 (Fla. 5th DCA 1981).

Jane Doe's reckless escalation, combined with Chez Elan's failure to supervise or train her on how to handle such a sensitive situation, meets those standards. She painted Mr. Fortson as a violent domestic abuser and set in motion a deadly police response. Further, Plaintiff asserts that Chez Elan failed to train or supervise Jane Doe about emergency response protocols. Given the foreseeable danger of police interactions, the lack of oversight is itself negligent and supports direct liability.

1. Jane Doe's Conduct Was Not a Mere "Report"…It Was a Reckless Escalation

Chez Elan argues that Jane Doe merely "called the police." But this mischaracterizes Plaintiff's allegations. Jane Doe did not simply notify law enforcement of a potential concern. Instead, she:

a) Told dispatch there was "active fighting" when there was none;

b) Claimed the situation "happened frequently" and "sounded like it was getting out of hand";

c) Referenced a prior "slap" from weeks earlier and identified Mr. Fortson's unit as the source, even though she admitted she didn't know where it came from.

This is affirmative misrepresentation, not mere suspicion. See *Valladares v. Bank of America Corp.*, 197 So. 3d 1, 11 (Fla. 2016) (bank employee's false report that customer was a bank robber held actionable under negligence and gross negligence theories; qualified privilege did

not bar claim because report was "grossly negligent" and resulted in violent police response).

2. Florida Law Does Not Shield Private Actors from the Consequences of Their Reckless Statements

Defendants who falsely instigate dangerous police encounters may be held liable under Florida tort law. In *Nodar v. Galbreath*, 462 So. 2d 803, 810 (Fla. 1984)[2] The Florida Supreme Court explained that even when a communication is privileged, the privilege is lost if it is made with "express malice or reckless disregard of the truth." Here, Jane Doe knew or should have known that she lacked direct knowledge of any violence. Yet, she misled both dispatch and the responding deputy into believing an ongoing, dangerous domestic altercation was unfolding in Apartment 1401.

Even if qualified privilege applied in theory, it cannot be resolved at the pleading stage, where the Plaintiff has plausibly alleged grossly reckless conduct. See *Burns v. GCC Beverages, Inc.,* 502 So. 2d 1217, 1220 (Fla. 1986); *NITV, LLC v. Baker,* 61 So. 3d 1249, 1253 (Fla. 1st DCA 2011) (Whether the privilege was abused is a question of fact for the jury.).

2. Plaintiff Has Alleged Both Direct and Vicarious Liability

Florida recognizes both vicarious liability and direct negligence (such as failure to train or supervise). See *Bello v. Johnson*, 442 F. App'x 477, 480 (11th Cir. 2011). Plaintiff alleges that Chez Elan:

1)  Failed to train Jane Doe on how to communicate with law enforcement;

---

[2] While portions of *Nodar v. Galbreath,* 462 So. 2d 803 (Fla. 1984), relating to defamation and employee grievance communications have since been superseded by statute, see *Linafelt v. Beverly Enters.-Fla., Inc.,* 745 So. 2d 386, 389 (Fla. 1st DCA 1999), its core holding remains intact and controlling here: that a qualified privilege is lost when a statement is made with "express malice or reckless disregard of the truth." *Id.* at 810. That principle continues to govern Florida law in tort actions involving reckless misrepresentations to third parties.

2) Did not implement policies or procedures for emergency responses;

3) Allowed her to escalate without oversight or a factual basis.

These allegations are sufficient under *Iqbal* and *Twombly* to proceed. Whether those failures constituted a breach of duty is a fact issue that will be determined through discovery and trial.

Plaintiff's allegations show more than carelessness; they show reckless disregard for the life of a tenant and a deliberate escalation of facts Jane Doe could not confirm. This is precisely the kind of conduct *Valladares* and *Burns* indicate is not protected by qualified privilege and sufficient to survive a motion to dismiss.

## E. <u>PLAINTIFF HAS ALLEGED SPECIFIC, PLAUSIBLE FACTS THAT OVERCOME ANY CLAIM OF QUALIFIED PRIVILEGE AT THE PLEADING STAGE</u>

Qualified privilege is not absolute and is overcome by allegations of malice, gross negligence, or reckless disregard. Plaintiff has pled facts sufficient to defeat immunity at this pleading stage.

Chez Elan asserts that Plaintiff has failed to plead any facts sufficient to overcome its qualified privilege. This is incorrect. Plaintiff alleges in detail that Chez Elan's employee, Jane Doe, acted recklessly, falsely, and in bad faith when she triggered the police response that led to Roger Fortson's death. These allegations are well-supported by specific facts and binding Florida law, and they are more than sufficient to survive a motion to dismiss.

1. <u>Florida Law Recognizes That Qualified Privilege Is Lost Where Malice or Reckless Disregard for the Truth Is Alleged</u>

Florida courts have made clear that even when a conditional privilege exists, such as when reporting suspected criminal activity to law enforcement, it is lost when the speaker acts with express malice or reckless disregard for the truth. See *Nodar v. Galbreath*, 462 So. 2d 803, 810 (Fla. 1984); *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016); *Burns v. GCC*

*Beverages, Inc.*, 502 So. 2d 1217, 1220 (Fla. 1986). These principles apply entirely here.

2. <u>The Complaint Alleges Specific and Plausible Facts Showing Reckless and False Statements by Jane Doe</u>

The Complaint does not rely on conclusory labels like "reckless" or "negligent" alone. It

includes specific factual allegations, including:

d)  Jane Doe falsely stated the violent fighting in Mr. Fortson's apartment "happened

frequently" and "sounded like it was getting out of hand" *(Compl. ¶¶ 24–26, Exhibit A-*

*IA Report, pg. 4 )*.

b)  She told dispatch there was "active fighting" in Apartment 1401, when in fact she saw

and heard nothing firsthand. *(Compl. ¶ 25)*

c)  She referenced a prior incident where she "heard a slap" two weeks earlier, and without

knowing the source, tied it to Mr. Fortson's apartment. *(Compl. ¶¶ 30–32)*

d)  She told the responding deputy that it sounded like the situation "was "getting out of

hand" a subjective escalation that was not grounded in observation. *(Compl. ¶ 27, Exhibit*

*A- IA Report, pg. 4 )*.

e)  She did not confirm or verify any of her statements, nor did she follow any protocols or

policies before reporting them, and Chez Elan had no policy or training in place to guide

her conduct. *(Compl. ¶¶ 45–48)*

These facts are sufficient to establish that Jane Doe recklessly misrepresented the nature of the

situation and that her employer, Chez Elan, failed to train or supervise her. This is precisely the

kind of conduct Florida courts have found voids the qualified privilege. See *Valladares*, 197 So.

3d at 11.

Additionally, the Okaloosa County Sheriff's Office Internal Affairs Report corroborates

these allegations. It confirms that:

a) The police response was based on a report of an ongoing violent domestic dispute.

b) Mr. Fortson was standing in his doorway, legally armed, not pointing the firearm, and using his left hand to hold a phone.

c) The officer shot him within seconds of arrival.

d) The Sheriff's Office concluded that the use of force was not objectively reasonable and violated policy.

This external evidence corroborates Plaintiff's claims that Jane Doe's false statements were not harmless or speculative; they were the foundation of a deadly encounter.

3. <u>Whether Privilege Applies and Whether It Was Abused Are Questions of Fact for the Jury</u>

It is well-settled that while the existence of privilege is a question of law, whether the privilege was abused is a question of fact that cannot be resolved at the motion to dismiss stage. See *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1220 (Fla. 1986); *NITV, LLC v. Baker*, 61 So. 3d 1249, 1253 (Fla. 1st DCA 2011). Chez Elan's motion attempts to resolve these disputed factual issues prematurely. But Plaintiff has pled enough to plausibly support her claims. At this stage, that is all that is required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Complaint alleges specific facts showing that Jane Doe made multiple, reckless misrepresentations about Mr. Fortson that led directly to a fatal police response. It also alleges that Chez Elan failed to train or supervise her. Under binding Florida law, these allegations defeat any assertion of qualified privilege at the motion to dismiss stage. The Court should deny the motion and allow the claims to proceed to discovery.

F. **DEFENDANT'S MOTION TO STRIKE SHOULD BE DENIED**

Plaintiff's Complaint narrative is proper and relevant to each of Plaintiff's claims. The case law is well established, that the Court must view the pleadings in a light most favorable to

the pleading party, therefore any Motion to Strike should rarely be granted. Rule 12(f) is permitted when addressing an insufficient defense or any redundant, immaterial, impertinent or scandalous matter. *Fed. R. Civ. Pro 12(f)*.

In *In re:2theMart.com, Inc. Securities Litigation*, the Court state that "immaterial means that the matter has no bearing on the controversy before the Court", which is the exact opposite of each fact alleged in Plaintiff's complaint. *In re:2theMart.com, Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D. Cal 2000). Impertinent has been defined as allegations that are not responsive or irrelevant to the issues that arise in the action. *Id*.

As previously stated herein, Plaintiff's facts address each claim alleged and directly relevant to matter at hand. Chez Elan has failed to meet the high burden of showing that Plaintiff's allegations have no bearing on the case. Therefore, the Motion to Strike should be denied. Further, punitive damages are properly pled under federal procedural rules and attorney's fees and jury trial demands are legally permissible and fact dependent.

## V.  **CONCLUSION AND REQUEST FOR RELIEF**

This case presents a tragic but actionable scenario: a tenant lost his life after a landlord's employee recklessly misinformed law enforcement about a nonexistent domestic disturbance. The Complaint sets forth detailed factual allegations, supported by body-worn camera footage, an internal affairs report, and public records,  showing that Defendant Chez Elan, through Jane Doe, created a foreseeable and fatal risk by misrepresenting the circumstances at Mr. Fortson's apartment.

Florida law does not immunize private actors who recklessly provoke deadly encounters with law enforcement. Plaintiff has plausibly alleged negligence and gross negligence, including direct liability for failure to train and supervise, and has pled facts that, taken as true, defeat

Defendant's claims of qualified privilege at the motion to dismiss stage.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1) Deny Defendant Chez Elan FL Property, LLC's Motion to Dismiss Counts IV and V;

2) Deny Defendant's Motion to Strike;

3) Grant such other and further relief as the Court deems just and proper.

## LOCAL RULE 7.1(B) AND (C) CERTIFICATION

Pursuant to Local Rule 7.1(D), no certificate of conferral is required since this is an opposition to a Motion to Dismiss.

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certifies that this Memorandum in Opposition does not exceed 5,700 words combined, as reported by the word-processing system utilized.

Respectfully submitted this 28th day of July 2025.

/s/ *Natalie Jackson*
Natalie Jackson (Fla. Bar No. 646075)
BEN CRUMP LAW, PLLC
121 South Orange Ave., Suite 1500
Orlando, FL 32801
Tel: (407) 749-9702
Email: natalie@bencrump.com
Counsel for Plaintiff