IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHANTIMEKKI FORTSON, individually
and as Personal Representative of
the Estate of Roger Fortson,

        PLAINTIFF,

vs.

SHERIFF ERIC ADEN, in his official
capacity; DEPUTY EDDIE DURAN,
in his individual capacity,

        DEFENDANTS.

_____

Case No: 3:25-cv-00591-TKW-ZCB
Judge Wetherell
Magistrate Judge Bolitho

## *NONPARTY* CHEZ'S MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, OR IN THE ALTERNATIVE, MOTION TO MODIFY THE PLAINTIFF'S THIRD AMENDED SUBPOENA AND FOR SANCTIONS

COMES NOW, **Nonparty**, CHEZ ELAN FL PROPERTY, LLC, a Delaware business entity (hereinafter "Chez"), by and through its undersigned counsel, and pursuant to the Federal Rules of Civil Procedure 26(c)(1), 30(b)(6), and 45, hereby files this Motion to Quash Plaintiff's Third Amended Subpoena Duces Tecum, Motion for Protective Order, or in the alternative, Motion to Modify the Subpoena and Motion for Sanctions. In support thereof, Chez states:

## INTRODUCTION

Plaintiff has not taken a single deposition, however she seeks sweeping corporate testimony (**16 topics**) from a **nonparty** who has been **dismissed** *with prejudice*. (Ex. 1, Pl. Third Am. Sub., ECF No. 47, at 3-6; see also ECF No. 34). The discovery sought is largely irrelevant to the pending claims, disproportionate to the needs of the case, significantly overbroad, tread on privileged information, and impose undue burden on a nonparty. The topics include "other *alleged* crimes or *misconduct*," document searches related to a prior subpoena, record-keeping, policies and procedures, unspecified "tenant complaints" about *other tenants* before and after the incident, the Mr. Fortson *and* his entire tenancy file, policies and procedures concerning suspected crimes and criminal activity, and Chez's "response to the incident."

The Plaintiff's subpoena is unenforceable for many reasons that include: (1) the Court's determination that **qualified immunity** precludes this lawsuit against Chez and Doe; (2) **defective service**; (3) infringement upon the **attorney client and opinion work product** privileges; (4) **undue burden** on a nonparty; (5) overly broad topics without reasonable specificity; (6) utter lack of **relevance** to the Parties' claims and defenses; (7) annoyance and harassment; and (8) demand for documents in an **unreasonable timeframe in excess of the geographical limits** specified in Rule 45(c).

## FACTS

1.    This lawsuit arises out of a May 3, 2024 police shooting after Mr. Fortson acknowledged a sheriff's deputy's presence by answering his front door with an "aggressive" stare and a pistol in hand. (ECF No. 1; see also ECF No. 2 at 2-3, 17-18, 26). The officer was responding to a call made by a leasing agent who conveyed a tenant's concerns of a potential ongoing domestic dispute. (ECF No. 1).

2.    Plaintiff has filed a Count Complaint alleging a Violation of 42 U.S.C. § 1983 and Use of Excessive Use of Force against deputy Duran (Count 1), Violation 42 U.S.C. § 1983 and Municipal Liability against sheriff Aden (Count 2), Wrongful Death against deputy Duran and sheriff Aden (Count 3), negligence against Chez and "Jane Doe" (Count 4), and gross negligence against Chez and Doe (Count 5). (ECF No. 1).

3.    The Plaintiff also sought to hold Chez vicariously liable for Doe's alleged failure to investigate a potential ongoing domestic disturbance before notifying the police (ECF No. 1, at ¶¶ 78, 79) and "independently liable for its failure to train or supervise Doe regarding emergency protocols." (ECF No. 1, at ¶¶ 80, 87).

4.    In its Order **dismissing the Plaintiff's allegations against Chez and Doe *with prejudice***, this Honorable Court recognized,

> The **claims against Chez are borderline frivolous** because the complaint and its attachments establish that Ms. Doe did precisely what any concerned citizen *should* do under these circumstances: she called law enforcement, provided the information she had, and then let law

enforcement investigate. From that point forward, **whatever happened is on law enforcement, *not* Ms. Doe—or the apartment complex** … [T]he Court sees no reason to allow Plaintiff to re-assert its claims against Chez in an amended complaint because **any amendment would be futile** under these circumstances.

(ECF No. 34, at 12, 14) (emphasis added).

5.      Chez FL Property LLC is a *Delaware*-based company that owns the **267-unit** apartment complex where Mr. Fortson lived. (Ex. 2, at ¶¶ 3, 4). Chez is managed by Beitel Inc., whose state of residence is New York. (ECF No. 1, at ¶ 10).

**The Subpoena and Deposition Notice**

6.      Plaintiff seeks the following corporate depositions from nonparty Chez "from May 2, 2024 to the present," unless otherwise stated:

1) "Document search related to Plaintiff's subpoena to produce documents served on Chez on November 5, 2025"

2) "Chez's record-keeping system for tracking tenant complaints of other tenants and disturbances"

3) "Chez's policies and procedures relating to tenant noise complaints, tenant complaints regarding other tenants and disturbances"

4) "Tenant complaints and disturbances regarding Roger Fortson and Mr. Fortson's  neighboring apartments before the Incident and after the Incident occurred"

5) "Roger Fortson from date of his application for tenancy at Chez to May 3, 2024, including background checks and tenant file"

6) "The Incident"

7) "Knowledge of Doe and her employment beginning from date of employment to May 3, 2024."

8) "Relationship between Doe's employer and You beginning from start date of Doe's employment through date of the Incident."

9) "Other alleged crimes or misconduct at" the premises

10) "Knowledge of Chantimekki Fortson individually and as the personal representative of the Estate of Roger Fortson v. Sheriff Eric Aden, et al. from May 3, 2024 to present."

11) "The tenant, C.S., who called 911 and/or notified Doe of the disturbance [at the premises] and the litigation.

12) "Layout of Your apartment complex."

13) Persons responsible for day-to-day operations regarding tenant disturbances and noise complaints" at the premises

14) "Safety policies and procedures for tenant complaints of suspected crimes and criminal activity" at the premises

15) "Method(s) for receiving and tracking tenant complaints regarding noise, suspicious and criminal activity and emergencies, including any investigation taken by You for tenant complaints involving other tenants"

16) "Any response to the Incident taken by You"

(Ex. 1, ECF No. 47, at 3-6).

7.     The undersigned accepted service via email, conditioned upon an express statement that the email constitutes service of the subpoena ..." (Id. at 1).

**Chez Elan's Operations**

8.      A third party property management company oversaw the daily operations of the premises, including staffing the leasing office, training and supervising staff and agents, and handling tenant communications, maintenance, record keeping, and routine community management functions. (Ex. 2, ECF No. 47, at ¶ 5).

9.      Chez did not have any on-site employees, including "Jane Doe." (Id. at ¶ 6).

**Jane Doe**

10.     Chez did not employ, hire, train, or supervise Doe before or at the time of incident. (Id. at ¶ 6-7).

11.     Doe is represented by separate counsel. (ECF Nos. 37-40, 43-44). Plaintiff has known Doe's identity since at least June 19, 2024, when she posted Her identity is known to Plaintiff. (ECF No. 46).

**Knowledge of The Incident**

12.     The Parties (next of kin, deputy, and sheriff) have firsthand knowledge of the incident and are in a far greater position to discover information relative to the incident and investigation. The *Plaintiff* has produced the Sheriff's Internal Affairs' investigation (ECF No. 2) and has surveillance video that was recorded by Mr. Fortson's girlfriend before, during, and after the shooting.

13.     Chez does not have personal or firsthand knowledge of the incident, investigation, or lawsuit. (Ex. 2, No. 47, at ¶ 11).

14.     Chez's limited knowledge is based upon hearsay and conversations that are subject to the attorney client and qualified immunity privileges.[1] (Id. at ¶¶ 3, 4).

15.     Chez did not interact with Mr. Fortson. (Id. at ¶ 8).

16.     Chez did not interact with "the tenant, C.S., who called 911 and/or notified Doe of the disturbance and the litigation." (Id. ¶ 9). Notably, the Plaintiff is aware of C.S.' identity.

17.     Chez did not have any communication with law enforcement relative to the subject incident or Mr. Forston. (Id. at ¶ 10).

**Document Production**

18.     Pursuant to an earlier subpoena issued by the Plaintiff, Chez previously produced (i) "All Documents and Communications related to the Incident" (three recorded calls); (ii) "All Documents related to any communications with any law enforcement entity, officer, agent, or employee on May 3, 2024" (none); and (iii)

---

[1] Chez produced 3 phone calls pursuant to Plaintiff's 11/05/25 subpoena that sought "all Documents and communications" (1) "related to the Incident;" (2) "with any law enforcement entity, officer, agent, or employee on 05/03/24;" and (3) "between 05/03/22 and 05/03/24 related to calls to or communications with any law enforcement entity, officer, agent, or employee related to domestic disturbances or any other alleged crime or misconduct" at the premises." (Ex. 3, Pl. Nov. 5, 2025 Sub. to Chez, ECF No. 47).

"All Documents between May 3, 2022 and May 3, 2024 related to calls to or communications with any law enforcement entity, officer, agent, or employee related to domestic disturbances or any other alleged crime or misconduct" on the premises (different tenant's medical emergency 16 months before the incident).

19.    Chez Elan does not have any additional materials related to the incident, other than those that are privileged, produced, or wholly irrelevant (such as *post-incident* death threats, bulletin's left on tenants' doors demanding "accountability," negative business reviews, internal memorandums regarding how to respond to tenants, media, and threats, etc.). (Ex. 2, ECF No. 47, at ¶ 12; id. at Ex. 4).

### LEGAL STANDARD FOR MOTIONS TO QUASH AND FOR PROTECTIVE ORDER

Although Rule 30(b)(6) permits the deposition of a nonparty organization, the parameters of the deposition are set by Rule 26, which allows "discovery regarding any **nonprivileged** matter that is **relevant** to any party's claim or defense and **proportional to the needs of the case**."  Fed. R. Civ. P. 26(b)(6)(1). The Court "must" quash or modify a subpoena that requires disclosure of privileged or protected matter or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3). The moving party "has the burden of persuasion" on a motion to quash, however the **party issuing the subpoena must demonstrate that the discovery sought is relevant**." *Chevron Corp. v. Danziger*, 2013 WL 4536808 at *4 (N.D. Cal. Aug. 22, 2013) (quotation omitted); see also *Optimize Tech Solutions, LLC v. Staples, Inc.*,

2014 WL 1477651 at *2 (N.D. Cal. Apr. 14, 2014) (quotation omitted); see also Fed. R. Civ. P. 45(d)(3)(A).

The Ninth Circuit recognizes that "**nonparties subject to discovery requests deserve extra protection** from the courts."[2] *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (quotation omitted) (Courts recognize that nonparties merit "heightened protection for nonparty discovery requests"); *Gilmore v. Jones*, 339 F.R.D. 111, 119 (W.D. Va. Jul. 1, 2021) ("courts must give the recipient's nonparty status 'special weight,' leading to and even more 'demanding and sensitive' inquiry than the one governing discovery generally."); *Dart Indus. Co., v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir. 1980) ("**discovery restrictions may be even broader where target is a nonparty**") (quotation omitted); *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994); *U.S. v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982); *Simon v. Taylor*, 2014 WL 66633917, *22 (D.N.M. Nov. 18, 2014).

When discovery is served upon a nonparty, courts evaluate three additional factors (1) **whether the requesting party actually needs the information sought**, meaning that the information 'likely (not just theoretically) … offer[s] some value

---

[2] "A defendant who has been dismissed from a case should be considered a nonparty for discovery purposes … this rule applies whether the party was dismissed with or without prejudice." *Simon v. Taylor*, 2014 WL 6633971, *15 (D.N.M. Nov. 18, 2014).

over and above what the requesting party already has;' **whether comparable information can be obtained from other sources**; and whether the subpoena imposes a cognizable **burden** on the nonparty. *Gilmore,* 339 F.R.D. at 119 (quotation omitted).

## MEMORANDUM OF LAW

Courts recognize that nonparties merit heightened protection, and have quashed nonparty subpoenas as overbroad, irrelevant, and disproportionate where the requests are "boundless and untethered" to the claims and defenses, and/or comparable information can be obtained from parties. *Gilmore*, 339 F.R.D. at 124. See *Gilmore,* F.R.D. at 123; see also *AFSCME Council 79 v. Scott*, 277 F.R.D. 474 (S.D. Fla. 2011).

## I. Subpoena Must be Quashed Due to Defective Service

From the outset, the subpoena must be quashed because service was defective pursuant to the federal rules (5, 26, and 30), local rule (5.1(F)), and Parties' Joint Scheduling Order (ECF No. 32, at ¶ (j)—despite advance notice that it had to be "accompanied by an unsigned subpoena and a notice that lacks a certificate of service and does not reflect service on the parties or all designees on the service list, nor compliance with the Local Rules."[3] (Ex. 1, ECF No. 47, at 1). See *Simon v.*

---

[3] The Plaintiff signed the subpoena before serving it upon the undersigned. The other defects mentioned above were not cured.

*Taylor*, 2014 WL, at*10 (denying motion to compel when the plaintiff failed to property serve and otherwise "comply with the first step of seeking discovery from a nonparty") citing *Smith v. Fla. Dep't. of Corr.*, 369 F. App'x 36, 38 (11th Cir. 2010) (no abuse its discretion denying motion to compel a nonparty discovery without valid service on the nonparty).  The Parties agreed that "in addition to the methods prescribed in Federal Rule of Civil Procedure 5, they will accept service by …  e-mail **so long as *every person registered* in CM/ECF for that party is served**." (ECF No. 32, at ¶(j)).

### a.  Failure to Give Proper Notice

Rule 30 states, "a party who wants to depose a person … must give reasonable **written notice to *every other party***." Fed. R. Civ. P. 30(b)(1). Rule 5 requires all discovery requests (i.e., notices of deposition and subpoenas) to be **served on all parties**. Fed. R. Civ. P. 5(a)(1).[4]  The Plaintiff has not provided evidence that deputy Duran was given notice of the deposition. (Ex. 1, No. 47, at 1). Also, written notice was not provided to 16 addresses registered in the CM/ECF for the Parties (half for

---

[4] Although no certificate of service is required when served through the court's electronic filing system under Rule 5(d)(1)(B), a certificate of service must be filed when served by other means and the notice is filed with the court.

the Plaintiff) or Doe, another immune nonparty and the subject of the Plaintiff's subpoena.[5] Id.

### b. Failure to File Certificate or Proof of Service

The Northern District of Florida requires each document to "include a [signed] **certificate of service**" along with "… the date and method of service." N.D. Fla. Loc. R. 5.1(F). The subpoena and Notice of Deposition are not accompanied by a certificate of service (Ex. 2, No. 47). Since the Plaintiff failed to include a certificate of service *and* failed to serve the document by email upon every person registered in CM/ECF (id. at *5), the Court need look no further and should quash the subpoena.

## II. Undue Burden

Whether a subpoena imposes an "undue burden" "depends upon … such factors as relevance, the need for the party documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169

---

[5] The following addresses registered with the CM/ECF were not served for **deputy Duran** (gadkins@...com, jclark@...com, lpreston@...com), **Sheriff Arden**: dwhitehurst@...com, mcarson@...com, mpimentel@...com, cpetruzzelli@...com, twylie@...com); **Plaintiff** (epitts@...com, bbarr@...com, epitts@...com, sstanley@...com, bknight@...com, dkondos@...net, hward@...net, natalie@...com), and **Doe** (atalbert@...com, brian.norback@...com, dshally@...com, melissa.smith@...com, robert.watford@...com).  Ex. 2.

F.R.D. 44, 49 (S.D.N.Y. 1996) (quotations omitted).   Here, the Plaintiff seeks testimony from a nonparty corporation relative to **allegations that have already been dismissed with** *prejudice,* are irrelevant to the Parties' claims or defenses, unduly burdensome, not proportional to the needs of the case, or stated with reasonable particularity. The subpoena should be quashed and a protective order should e entered as a result.

### a. Topics Not Stated With Reasonable Particularity

A Rule 30(b)(6) notice must describe with **reasonable particularity** the matters for examination and must be confined to relevant, proportional topics. Fed. R. Civ. P. 30(b)(6). Plaintiff seeks to interrogate Chez's corporate representatives regarding 16 topics from "May 2, 2024 *to the present*," "unless otherwise stated." (Ex. 2, No. 47, at 2). It will be difficult for Chez to identify and prepare a witness(es) to answer questions on this overly broad topic because questions could go in a variety of directions and require knowledge of many different things that are based upon hearsay. Like *Wieland,* "this is, therefore, a situation where the breadth of the topic 'identified in a Rule 30(b)(6) deposition notice renders [the] responding party's efforts to designate a knowledgeable person unworkable.'" *Wieland v. Bd. of Regents of the Nev. Sys. of Higher Ed.*, No. 3:19-cv-00724, 2021 WL 4443683, at *3 (D. Nev. Sept. 28, 2021) (quotation omitted).

### b. Discovery Can Be Obtained From Other Sources

Page 13

Courts may refuse discovery requests aimed at nonparties in cases where the same testimony or documents could instead be obtained from a party to the action. Fed. R. Civ. P. 26(b)(2)(C), 45(1)(A)(iii). "The **availability of similar documents and information is itself a separate basis to quash**" a nonparty subpoena. *AFSCME Council,* 277 F.R.D. at 479; see also *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming order requiring the plaintiff to **seek discovery "from its party opponent before burdening nonparty** with ancillary proceeding"); *Gilmore*, 339 F.R.D. at 119 (recognizing courts "limit or quash subpoenas where the requesting party fails to show a concrete, particularized need that likely offers value **beyond what is already possessed or available from party discovery**").

The Plaintiff did not take a single deposition before she demanded **testimony from 16 nonparty corporate representatives**. The Plaintiff is able to obtain similar documents or information from other sources and is aware of the identities of Doe and the tenant who reported the disturbance coming from Mr. Fortson's apartment.

c. **Subpoenas to Nonparties Must Be Narrow, Relevant, and Proportional; Courts Give "Special Weight" to Nonparty Burden**

Courts must quash or modify subpeonas that seek irrelevant information from nonparties. *Gilbert,* 339 F.R.D. 111. Further, the Parties agreed to limit discovery to "matters **related** to and **proportional to the needs** of Plaintiff's claims and the

Defendants' defenses" (ECF No. 31, at ¶ 6) (emphasis added). See *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 CIV. 1382, RWS, 2003 WL 23018833 (S.D. N.Y. Dec. 23, 2003) (quashing subpoena that sought information concerning a former party without a showing that the relevance outweighed the burden imposed on a nonparty); *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) (where a *defendant* "cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible").

The scope of the 16 topics, over a 2-year span "unless stated otherwise" (Ex. 2) are so overbroad that Chez cannot possibly prepare its representatives to discuss the examination topics, including unspecified "tenant complaints," "disturbances," "suspicious and criminal activities," "emergencies," "suspected crimes and criminal activity," and "other alleged crimes or misconduct" (Ex. 2 at 2-5, 9, 13-15); unspecified inquiries regarding Mr. Fortson from the date of his application" until May 3, 2024 (id. at 5), "the incident" (id. at 6), Doe (id. at 7), "the tenant … who called 911 … and the litigation" (id. at 11);[6] policies regarding "safety," "tenant

---

[6] In *Beaulieu*, the court determined that the designation "including her entire complaint" was "not described with any particularity ... it is unclear what exactly she wishes to obtain … if plaintiff wishes to proceed with a 30(b)(6) deposition of *defendant*, she must provide a specific notice of deposition that identifies with reasonable particularity the matters on which she is requesting examination." *Beaulieu v. Bd. of Trustee of Univ. of W. Fla.,* No. 3:07 cv-30-42007 WL 9734886, at 4 (Oct. 4, 2007). Emphasis in original.

complaints of suspected crimes and criminal activities," tenant complaints regarding other tenants and disturbances" (id. at 4); the lawsuit (id. at 10; see also *infra* fn 7); and layout of the complex (id. at 12).

Other topics are clearly irrelevant, such as hiring and training (Ex. 2 at 7-8), policies and procedures (id. at 2-3, 13-15), unspecified "tenant complaints and disturbances involving" Mr. Fortson *and* his "neighboring apartments before the incident and after the incident …" (id. at 4), "Doe and her employment" (id. at 7), the relationship amongst Doe's employer and Chez (Ex. 2 at 8);[7] "other alleged crimes or misconduct" (id. at 9), "document search related to" production of prior records, the layout (id. at 12), and *post*-incident investigation (id. at 16).

### d.  Stay and Duplicative Burden on Nonparty Warrants Protection

Courts have discretion to stay or quash nonparty subpoenas to prevent duplicative depositions on identical topics that would need to be re-taken after a stay is lifted. See *Harry F. Ortlip Co. v. George Hyman Const. Co.*, 126 F.R.D. 494 (E.D. 1989) (precluding a third-party defendant from deposing two nonparties during a stay pending arbitration); *In re Cree, Inc., Secs. Litig.,* 333 F. Supp. 2d 461, 469 (M.D.N.C. 2004) (quashing 13 nonparty subpoenas during a stay and requiring the

---

[7] See also *Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) (affirming quashed subpoena that sought documents related to a nonparty's "business relationship with other nonparties …").

plaintiff to first "demonstrate that the requested discovery is **particularized and necessary to preserve evidence or prevent injustice**"). Since the case is stayed as to deputy Duran, Chez's corporate representatives should not be burdened or subjected to second depositions on identical topics.

## III.   Topics Infringe on Privileged Information

Rule 26(b)(1) explains that the proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Supreme Court has recognized that "**discovery should not be allowed" until the "threshold immunity question is resolved**," recognizing that "[o]ne of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted" discovery. *Siegert v. Gilley*, 500 U.S. 226, 230 (1991) (quotations omitted).

Since Chez does not have personal knowledge of the incident (Ex. 2), was dismissed based upon qualified immunity, and its limited knowledge is based largely upon hearsay and privileged conversations, the subpoena should be quashed, particularly as it relates to the lawsuit and incident (Ex. 2 at ¶ 6 & 9-11).

a.   **Protective Order Warranted to Preclude Annoyance, Harassment, and Undue Burden**

The Court "may" issue a protective order to protect a party or person from annoyance, embarrassment, oppression, undue burden, or expense by forbidding

discovery or limiting the scope to certain matters. Id. at 26(c). For the reasons stated above, a protective order is warranted for these reasons.

b.   **Request for Document Production Improper and Exceeds Geographic Limits**

Rule 45's geographic limits preclude compelling a Delaware/New York nonparty to produce documents in Florida; subpoenas demanding production beyond those limits must be quashed or modified. Fed. R. Civ. P. 45(d)(1). The Plaintiff seeks:

1) "All nonprivileged Documents and Communications related to the preparation of this deposition."

2) "Retention policy for Chez's document retention system relating to tenant complaints of other tenants, noise complaints, and reports of disturbances."

3) Chez's "policies and procedures relating to tenant complaints involving other tenants and disturbances at" the premises.

Broad, unfocused questioning of a nonparty about its document collection procedures constitutes the kind of "annoyance" and "undue burden or expense" that Rules 26(c) and 45(d)(1) were designed to prevent.  Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d)(1) (issuing party has an affirmative duty to avoid imposing undue burden or expense on the nonparty). This demand is improper and intrudes upon counsel work product and privileged communications; at minimum, good cause exists for a protective order precluding any inquiry into deposition preparation and

Page 18

instructions to the witness. The other requests are irrelevant and unduly burdensome on a nonparty, as explained *supra*.

## c.    Sanctions for Failure to Avoid Undue Burden on Nonparties

Rule 45 mandates that courts enforce the duty to avoid imposing undue burden or expense on nonparties and authorizes appropriate sanctions, including reasonable attorney's fees, when issuing parties fail to comply. Fed. R. Civ. P. 45(c)(1); see also *In Re NCAA Student-Athlete Name & Likeness Licensing Lit.*, No. 09-cv-01967 CW, 2012 WL 4846522, *2 (N.D. Cal. Aug. 7, 2012).

The Ninth Circuit noted, "[a]lthough party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party … **A witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party**." *U.S. v. Columbia Broadcasting Syst., Inc.*, 666 F. 2d 364, 372 (9th Cir. 1982); see also *Night Hawk Ltd.*, 2003 WL 23018833 ("sanctions are properly imposed and attorney's fees are awarded where the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash") (quotations omitted); *Am. Int'l Life Assur. Co. v. Vazquez*, No. 02 Civ. 141, 2003 WL 548736 at

*2-3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions for lost wages and awarding attorney's fees incurred in bringing motion to quash after attorney issuing subpoena refused to voluntarily withdraw subpoena that sought privileged information).

## CONCLUSION

**WHEREFORE**, Defendant, CHEZ FL PROPERTY, LLC, a Delaware business entity, respectfully requests this Honorable Court:

1.      Quash Plaintiff's Rule 45 Third Amended subpoena and Rule 30(b)(6) notice in full for the reasons stated above;

2.      In the alternative, enter a protective order: (i) limiting any Rule 30(b)(6) deposition to narrowly tailored, non-privileged, incident-specific communications concerning Mr. Fortson or identification of the roles of any personnel with first-hand knowledge of the incident (although none); (ii) *excluding* any testimony of corporate policies, historical tenant complaints unrelated to the incident or other crimes/misconduct at the property, litigation knowledge or strategy, record-keeping systems, and deposition preparation; (iii) precluding, or alternatively limiting any document production to the nonprivileged, *pre*incident-specific communications between Chez and law enforcement/the decedent within the confines of the Rule 45's geographic limitations; (iv) ordering that the limited deposition be conducted remotely; and (v) providing for confidentiality and a Rule 502(d) clawback order stating the "production of privileged or work-product protected documents,

electronically stored information, or information shall not constitute a waiver of the privilege or protection in this or any other federal or state proceeding;"

3.      Staying Chez's compliance pending the Court's ruling and/or the lift of the stay as to deputy Duran;

4.      Awarding all attorneys' fees and costs incurred with the subpoena and instant Motion; and,

5.      Granting such other and further relief as the Court deems just and proper.

**LOCAL RULE 7.1(B)(C) CERTIFICATION**

Pursuant to Local Rules 7.1(B) and 7.1(C), the undersigned certifies a good faith effort to resolve these issues with the Plaintiff's attorneys via video teleconference and/or email on February 2, 2026 (*26* topics in *initial* subpoena), February 12, 2026 (*21* topics in *amended* notice), February 26, 2026 (*18 topics in* second amended notice), and March 3, 2026 (third amended notice).  The Parties were not able to resolve the remaining issues, all set forth in the Third Amended Notice (Ex. 2) and the instant Motion.

**LOCAL RULE 7.1 (F) CERTIFICATION**

Pursuant to Local Rule 7.1(F), the undersigned certifies that this Motion and memorandum of law does not exceed 8,000 words combined, as reported by the word-processing system utilized.

Page 21

Respectfully submitted this 6<u>th</u> day of April 2026.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 6th day of April 2026, a true and correct copy of

the foregoing was filed in the US District Court, Northern District of Florida, using

the CM/ECF system.

> COLE, SCOTT & KISSANE, P.A.
> *Counsel for nonparty CHEZ ELAN FL*
> *PROPERTY LLC*
> 110 S.E. 6th Street, Suite 2700
> Fort Lauderdale, Florida 33301
> Telephone 954-703-3756
> Facsimile 954-703-3701
> Primary e-mail: jami.gursky@csklegal.com
> Secondary e-mail:
> alina.gonzalez@csklegal.com
>
>
> */s/ Jami Gursky*
> JAMI L. GURSKY
> Florida Bar No.: 572926