UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| CHANTIMEKKI FORTSON, individually and as the personal representative of the Estate of Roger Fortson,<br><br>Plaintiff,<br><br>*v.*<br><br>SHERIFF ERIC ADEN, et al.,<br><br>Defendants. | Case No. 3:25-cv-591-TKW-ZCB<br><br>Judge Wetherell<br>Magistrate Judge Bolitho |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON DEFENDANT ADEN'S PRIVILEGE REPORT**

Plaintiff Chantimekki Fortson, individually and as the personal representative of the Estate of Roger Fortson, moves under Federal Rules of Civil Procedure 26(b)(5) and 37(a)(3)(B)(iv) for an order compelling Defendant Sheriff Eric Aden to produce the documents Plaintiff identified in her April 23, 2026 challenge to the Sheriff's Privilege Report (attached to the accompanying memorandum as Exhibit 7), other than those to or from the Sheriff's litigation counsel. Plaintiff seeks an order compelling production of the challenged documents on the grounds set forth in the accompanying memorandum in support of this motion.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| CHANTIMEKKI FORTSON, individually and as the personal representative of the Estate of Roger Fortson,<br><br>Plaintiff,<br><br>*v.*<br><br>SHERIFF ERIC ADEN, et al.,<br><br>Defendants. | Case No. 3:25-cv-591-TKW-ZCB<br><br>Judge Wetherell<br>Magistrate Judge Bolitho |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON DEFENDANT ADEN'S PRIVILEGE REPORT**

Plaintiff Chantimekki Fortson, individually and as the personal representative of the Estate of Roger Fortson, moves under Federal Rules of Civil Procedure 26(b)(5) and 37(a)(3)(B)(iv) for an order compelling Defendant Sheriff Eric Aden to produce the documents Plaintiff identified in her April 23, 2026 challenge to the Sheriff's Privilege Report, other than those to or from the Sheriff's litigation counsel.

Plaintiff's April 23, 2026 challenge identified 1,647 of the 1,706 entries on the Privilege Report. (Ex. 6; Ex. 7.) Of those, 544 belong to email families in which an attorney or employee of Sniffen & Spellman, P.A. or Spellman Law, P.A. appears as author, sender, or recipient. Plaintiff withdraws her challenge to those 544 and asks the Court to order production of the other 1,103.

## INTRODUCTION

Sheriff Aden has withheld 1,706 documents from his electronic discovery production on grounds of privilege. He has not described any of them. What he served instead is a spreadsheet exported from his vendor's review platform, listing control numbers, file names, dates, and some email addresses and subject lines. No field describes the contents or purpose of any withheld document. The Sheriff does not dispute this. His counsel wrote on June 16, 2026 that "we failed to describe the nature of the documents listed in sufficient detail for the assertion of privilege to be assessed," and repeated the concession on August 3, 2026. (Ex. 8 at 1; Ex. 10 at 1.)

Rule 26(b)(5)(A) requires more, and the Eleventh Circuit has recently restated what it requires. A claim of privilege "is not self-executing." *In re Renco Grp. Inc.*, 164 F.4th 1336, 1344 (11th Cir. 2026). The withholding party must support its claims "on a document-by-document basis," because "[b]lanket assertions of privilege before a district court are usually unacceptable," and it bears "the burden of establishing that the privilege applies by a preponderance of the evidence." *Id.* at 1344–45 (citations omitted).

The Sheriff did not proceed that way. His counsel has described the method: "we applied privilege objections across a broad set of categories, such as emails in which the Sheriff's General Counsel was a sender or recipient, or communications with a public relations firm hired by the Sheriff's Office in the aftermath of the

shooting incident." (Ex. 8 at 1.) That is designation by participant rather than by content, and the results are visible on the report. For example, withheld in full as "Attorney Client Communication" are virtually all communications with the aforementioned public relations firm, emails from Plaintiff's own counsel, the Sheriff's Office's own General Orders, and communications with the State Attorney's Office prosecuting Deputy Duran.

Eight months have passed since the Sheriff first asserted these privileges, and his counsel has twice stated in writing that he will not do the work unless Plaintiff first persuades him it is worthwhile. (Ex. 8 at 2; Ex. 10 at 1.) He also never objected to the requests that call for these documents on any ground. (Ex. 1 at 5–8, 10.) The privilege as to the challenged entries should be deemed waived and the documents produced.

## I. BACKGROUND

Plaintiff's Request for Production No. 9 to Sheriff Aden sought:

> All Documents related to the Incident, including but not limited to: 911 dispatch records and recordings, use of force reports, incident reports and any other records or reports arising out of the Incident; photographs or diagrams; and all communications related to the Incident (including text messages, emails, and social media messages).

(Ex. 1 at 5.) The Sheriff responded, without objection, that he "is producing all responsive documents," and that "[a]s agreed to by the parties, the documents which are in the form of emails and text messages will be produced at a later date." (Id.)

He asserted no objection to other requests reaching the same material. Request No. 13 sought all documents related to the Sheriff's own investigation, "including . . . all after-action reports, witness statements, witness interviews, and reports, analyses, or assessments relating to the Incident"; he answered that he was producing responsive documents and withheld only "[a]ny investigative documents done by or at the instruction of counsel in anticipation of litigation," under the work product doctrine. (Id. at 6–7.) He objected to none of Request No. 12 (communications relating to any outside investigation), Request No. 14 ("any documentation that shows how the decision came to be made to terminate Defendant Duran"), Request No. 17 (Duran's training history), or Request No. 23 (Air Force communications). (Id. at 6–8, 10.). The time period identified for each Request for Production at issue was January 1, 2018 to the present. Ex. 11 at 4. The Sheriff did not object to that time period. Ex. 1.

Elsewhere in the same responses he did object on grounds of breadth and burden. Request No. 21 was "overbroad and not proportional to the needs of this case"; as to Request No. 33 he objected "to the burdensome nature required to search

and sift through" the material; and Request No. 35 was not proportional because "[t]he burden it imposes on the Sheriff outweighs its likely benefit." (Ex. 1 at 9, 13–15.) He raised none of those objections to the requests at issue here—for documents and communications related to the subject incident.

On December 9, 2025, the Sheriff served a privilege log identifying eight categories of withheld material rather than individual documents. (Ex. 2.) One category was "[a]ny and all communications between attorney and clients, including . . . communications between and among the attorneys and staff of Sniffen & Spellman, P.A., and Sheriff Eric Aden and any of his employees/agents"; another was "[a]ny and all notes, writings and/or recordings by Sheriff Eric Aden or his employees/agents" prepared in anticipation of litigation or at the instruction of attorneys (Id. at 2.) Nothing identified any author, recipient, date, or subject. On January 13, 2026, Plaintiff explained why the log did not satisfy Rule 26(b)(5)(A) and asked to confer on the parameters of a compliant log. (Ex. 3 at 4–5.). The parties conferred regarding the privilege log and other discovery issues raised in Plaintiff's correspondence on January 28, 2026.

On February 3, 2026, the Sheriff served an amended privilege log carrying six of the eight categories forward and adding one: "ESI data from production sets produced on 1/16/26 and 1/23/26 with privilege designations (see attached Privilege Report)." (Ex. 4 at 3.) The attached Privilege Report is Exhibit 5.

The report is a fourteen-column spreadsheet capturing a control number, group identifier, custodian, title, date, author, sender, recipient and copy fields, subject, file name and extension, privilege designation, and privilege reason. No column describes the nature or subject matter of any document, states the purpose for which it was created, identifies anyone's role or capacity, or explains why it is privileged. The substance of the privilege report, however, makes clear that the vast majority—if not all—of the documents identified are communications related to the subject incident. All of these communications are responsive to RFP 9, to which the Sheriff did not object. The Sheriff does not dispute that the documents identified in the privilege report are in fact communications related to the subject incident.

Of the 1,706 entries, 1,675 are marked "Yes – Entirely Withhold," and for 1,642 the entire stated basis is the phrase "Attorney Client Communication." Twenty-nine carry no privilege designation at all, and the custodian field reads "Data" for every entry.

On April 23, 2026, Plaintiff served a letter and an accompanying spreadsheet. (Ex. 6; Ex. 7.) The letter identified the patterns Plaintiff could see despite the report's omissions: "[t]he frequent presence of third parties—including Plaintiff's counsel—repeatedly throughout the privilege log, in combination with the wholesale inclusion of virtually every communication with a public relations firm and nearly every

communication with OCSO's General Counsel, suggests a haphazard process in which privilege was asserted on a wholesale basis." (Ex. 6 at 1.)

The spreadsheet identified 1,647 of the 1,706 entries, entry by entry, in three categories: entries reflecting the participation of a public relations firm or another third party; entries with too little information to permit any assessment of privilege; and entries whose designation Plaintiff challenged outright. The letter again asked the Sheriff to "provide an actual description of each withheld or redacted document" as Rule 26(b)(5)(A)(ii) requires. (Ex. 6 at 3; Ex. 7.)

The parties conferred by videoconference on May 14, 2026. On June 16, 2026, the Sheriff's counsel responded in writing, describing the method used: of "the estimated 12,000 documents we produced, we applied privilege objections across a broad set of categories, such as emails in which the Sheriff's General Counsel was a sender or recipient, or communications with a public relations firm hired by the Sheriff's Office in the aftermath of the shooting incident." (Ex. 8 at 1.) He then conceded that "we failed to describe the nature of the documents listed in sufficient detail for the assertion of privilege to be assessed." (Id.)

He did not offer to cure the deficiency. He reported that reviewing every challenged document "will require 22 additional hours of attorney time," and that another "$10,000" of work "seems unreasonable and more form than substance." (Id. at 2.) He argued that "discovery of information after the fact is not proportional

to the needs of this case," and that Plaintiff should "justify why your demand is proportional." (Id.) The same letter reported that a second round of depositions had been scheduled and that mailboxes were still being searched. (Id. at 1.)

On July 14, 2026, Plaintiff responded, explained why the objection was untimely and unfounded, narrowed the challenge to exclude communications with litigation counsel, and asked for a compliant log by July 28. (Ex. 9 at 1–2.) On July 30 and August 3, 2026,[1] the Sheriff's counsel replied that "[w]e appear to be going in circles," repeated that "our log failed to describe the nature of the 1,700 documents at issue in sufficient detail," and again conditioned further work on Plaintiff first identifying "the specific issue that will be resolved." (Ex. 10 at 1.) No compliant log has been served.

## II. ARGUMENT

### A. The Privilege Report does not satisfy Rule 26(b)(5)(A), and the Sheriff agrees that it does not.

A party withholding otherwise discoverable information on privilege grounds must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable

[1] The Sheriff's counsel initially responded to Plaintiff's July 14, 2026 correspondence on July 30, 2026, and then sent an updated version of that correspondence to Plaintiff's counsel on August 3, 2026 to amend an unrelated issue.

other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The obligation runs with the decision to withhold. It is not a discovery request subject to proportionality balancing.

The Eleventh Circuit addressed these requirements this year in *Renco*. A claim of privilege or work product "is not self-executing." 164 F.4th at 1344. "In this Circuit we require a party seeking to withhold information on the basis of a privilege to support its claims 'on a document-by-document basis,' " because "[b]lanket assertions of privilege before a district court are usually unacceptable." *Id.* (quoting *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987)). The withholding party "bears the burden of establishing that the privilege applies by a preponderance of the evidence." *Id.* at 1344; *see also Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1393 (N.D. Ga. 2017) ("Blanket and general assertions of a claim of privilege do not provide sufficient detail about the documents to enable the plaintiff or the court to determine whether the withheld documents were privileged."). The burden is met "when the party produces a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit from counsel." *Id.* (quoting *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007)).

The Privilege Report does not do this. It has no field for subject matter or purpose, no explanation of why any document is privileged, and no statement of

anyone's capacity. For 1,642 of 1,706 entries the entire stated justification is a three-word label; 529 entries have no subject line, 586 no sender, and 369 no author. Of the 1,103 entries at issue, 182 identify no author, sender, or recipient. The Sheriff has submitted no affidavit. A conclusory designation does not carry the burden: where "the only information presented was an allegation in the log itself that a document was prepared or transmitted 'at the direction of counsel,' " the court in *United States v. Davita, Inc.*, 301 F.R.D. 676, 682 (N.D. Ga. 2014), "generally denied the claim of privilege." Nor does a log that omits the participants' roles. In *Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.*, 230 F.R.D. 688, 696 (M.D. Fla. 2005), the court found waiver where a log "fail[ed] to identify the capacity of many recipients and d[id] not provide sufficient information to assess the claim of privilege."

The Sheriff does not defend the report. He has twice conceded that it does not permit his claims to be assessed. (Ex. 8 at 1; Ex. 10 at 1.) A party seeking discovery "should not be required to ask for something that the Rules clearly state the defendant must provide." *Pensacola Firefighters' Relief Pension Fund Bd. of Trs. v. Merrill Lynch*, 265 F.R.D. 589, 594 (N.D. Fla. 2010).

The June 16 letter states that privilege objections were applied "across a broad set of categories, such as emails in which the Sheriff's General Counsel was a sender or recipient, or communications with a public relations firm." (Ex. 8 at 1.) The first

criterion fails because a lawyer's name on a message does not make the message privileged. But "[w]here the lawyer is performing a function primarily performed by a corporate employee the communication does not magically become privileged simply because a lawyer is involved"; the test "is whether counsel was participating in the communications primarily for the purpose of rendering legal advice or assistance." *In re Abilify (Aripiprazole) Products Liability Litigation*, No. 3:16-md-2734, 2017 WL 6757558, at *9 (N.D. Fla. Dec. 29, 2017). While "[c]ommunications between corporate client and outside litigation counsel are cloaked with a presumption of privilege," communications with "corporate counsel . . . involve a much different dynamic," and the proponent "must clearly show that the primary purpose of the communication was, in fact, for legal advice." *Davita*, 301 F.R.D. at 682. That distinction matters for an officer like Marsha Weaver, who serves as the Sheriff's General Counsel and who is not retained specifically to serve as litigation counsel. *Meade* addressed the same practice, finding that the defendant had "improperly asserted the attorney-client privilege over several documents that contain purely factual information merely because in-house counsel is included in the email chain." 250 F. Supp. 3d at 1394.

The second criterion is a reason to doubt privilege rather than to assert it. The report contains 462 entries reflecting the public relations firm's participation, 220 naming no attorney or employee of the Sheriff's litigation counsel. Their titles

concern public messaging: for instance, draft press conference materials and a "Statement In Response To NAACP Demands." A communication "loses its protection if made in the presence of third parties." *Davita*, 301 F.R.D. at 682. Privilege can survive a publicist's participation, but only where "the function performed by the consultant related to assisting legal counsel in providing legal advice[.]" *In re Abilify*, 2017 WL 6757558, at *8. The Sheriff has not attempted that showing for any of these entries, and it is his to make. *Renco*, 164 F.4th at 1344–45.

The contents of the report show that no document-by-document assessment occurred. Each item below falls within the 1,103 entries at issue and is marked "Yes – Entirely Withhold" solely as an "Attorney Client Communication," unless noted:

- **Plaintiff's counsel.** Multiple emails involving Brian Barr of Levin Papantonio as a sender and/or recipient, subject "Roger Fortson" (IST_00004767; IST_00006518); an email from Natalie Jackson of Ben Crump Law to Ms. Weaver copying Mr. Crump and Mr. Barr (IST_00005727); an OCSO reply to a Ben Crump Law paralegal about a records request (IST_00006436).
- **Outside agencies.** An email from Sheriff Aden to an Air Force public affairs officer, subject "Re: Invite: Hurlburt Town Hall Tues 21 May 2-4pm" (IST_00005724); and an email from an employee of the City of

Altus, Oklahoma, Deputy Duran's former employer, subject "RE: Eddie Duran" (IST_00003881).

- **The prosecutor.** An email from Ms. Weaver to an attorney at the Office of the State Attorney for the First Judicial Circuit, subject "IA," with its attachment "IA 2024-012 Final Report.pdf" (IST_00003827, IST_00003827.0001).
- **Records already public or produced in other channels.** The incident report as released to a public records requester; "May 9 - FULL REMARKS FROM OCSO NEWS CONFERENCE.pdf"; the computer-aided dispatch report; and Mr. Fortson's medical records.
- **Recordings and reports of the incident itself.** An email family comprising numerous .wav audio files and .csv metadata exports bearing timestamps from the afternoon of May 3, 2024 (IST_00001128); and numerous entries for "IA 2024-012 Final Report," the Office's internal affairs report on this shooting. Plaintiff has the incident and dispatch records the Sheriff produced and does not suggest these entries are its only source for them. They matter because a review that applied the attorney-client label to agency radio traffic and an internal affairs report was not assessing whether each document was a confidential communication with counsel.

If privilege had been assessed document by document and the log merely described the results too thinly, an order to serve a fuller log may be a sensible fix. But here, the Sheriff's counsel has stated that designations were applied "across a broad set of categories," and the report's contents are consistent with that account. An order to log now would direct counsel to construct, many months after fact, individualized justifications for determinations that were never individually made. Plaintiff has already litigated two logs: the first identified broad categories, the second identified files but described nothing. The Court should not provide the Sheriff with the opportunity to correct longstanding, knowing noncompliance with the rules.

### B. The Sheriff waived any relevance or proportionality objection, and the withheld communications are relevant in any event.

A party responding to a request for production must "state with specificity the grounds for objecting to the request," and an objection to part of a request "must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(B)–(C). Local Rule 26.1(C) requires the same specificity and disfavors boilerplate. An objection not timely made is waived. *See Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 668 (N.D. Fla. 2010). And "[t]he onus is on the party resisting discovery to demonstrate specifically how the objected-to request is unreasonable or otherwise

unduly burdensome." *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1354 (S.D. Fla. 2000).

The Sheriff made no objection to Requests 9, 12, 14, 17, 23, or 25, and objected to Request 13 only on work product grounds. The relevance and proportionality objections he now advances first appeared on June 16, 2026, more than six months after his responses. That he objected on breadth and burden grounds to Requests 21, 33, and 35 indicates the omission was a choice rather than an oversight. More fundamentally, the Sheriff's relevance and proportionality objections are to *the production of a privilege log*, not the production of documents—the Sheriff has already identified the (relatively narrow) universe of documents at issue in this motion, and cannot claim it would be burdensome to produce them. Instead, the Sheriff complains about the time and expense of producing a privilege log. But "the fact that the compilation of such a log is burdensome will not obviate the obligation of providing one." *Pensacola Firefighters*, 265 F.R.D. at 593. Rule 26(b)(5)(A) contains no relevance exception. A party may not withhold concededly responsive documents while declining to describe them on the view that they do not matter.

Indeed, the Sheriff does not appear to contend that the documents identified in the Privilege Report are not *responsive* to the RFPs to which the Sheriff did not object—*e.g.,* that they are not communications relating to the subject incident.

Instead, the Sheriff suggests that he has no obligation to log the documents because they aren't of sufficient importance to the litigation, by his counsel's estimation. Discovery reaches "any nonprivileged matter that is relevant to any party's claim or defense," and such information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

What the report withholds is, for the most part, the Sheriff's Office's own correspondence about this shooting: what its personnel wrote to one another, to its risk pool, to its publicist, and to outside agencies in the days and months after Deputy Duran killed Mr. Fortson. Those communications are certainly relevant: they are a named defendant's own statements about the event in suit. Statements by Sheriff Aden and his employees concerning the shooting are admissions of a party opponent. Fed. R. Evid. 801(d)(2)(A), (D). A party's account of and response to an event does not become irrelevant because it was given afterward—otherwise, no incident reports, witness statements, or other evidence regularly used in litigation of all manner would be discoverable. After-incident communications are also, at a minimum, impeachment and consistency material. Sheriff's Office personnel will testify about the incident, the investigation, and the agency's policies, and their

contemporaneous written statements on those subjects are ordinary material for examining them.

The Sheriff has contended that post-incident communications are not relevant because they cannot speak to a "ratification" theory under *Monell*, but that argument is both substantively and procedurally incorrect. At the outset, the Sheriff's RFP responses did not object to the identified time period for the requests at issue, which included post-incident communications. Ex. 1; Ex. 11 at 4. Any such objection is waived. Substantively, of course the Sheriff's Office's post-Incident statements could support a ratification theory, but the Sheriff's characterization of the purpose of Plaintiff's requests are wildly underinclusive: the Sheriff's post-Incident communications could very well bear on the events that occurred during the Incident and the policies and practices that led to the subject incident. The Sheriff's position is, essentially, "trust me, these communications about the subject incident are irrelevant." But the Federal Rules of Civil Procedure do not require the Plaintiff to trust the Sheriff's representations. And those representations cannot be squared with the fact that the Sheriff in fact produced responsive post-incident communications relating to the incident that were not swept up in his one-size-fits-all privilege assessment. By making this production and failing to object to the RFPs identified above, the Sheriff has admitted that the communications subject to this motion are

relevant and responsive—the Sheriff simply declined to do the work to properly assert the privilege.

### C. The privilege should be deemed waived as to the challenged entries.

The Sheriff has waived privilege over the challenged entries. In assessing waiver, the court applies a case-by-case reasonableness inquiry, weighing the degree to which the assertion of privilege "enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient)"; "the timeliness of the objection and accompanying information about the withheld documents"; "the magnitude of the document production"; and other circumstances making discovery "unusually easy . . . or unusually hard." *Pensacola Firefighters*, 265 F.R.D. at 593 (quoting *Universal City*, 230 F.R.D. at 695). Each consideration supports waiver here.

*Evaluability.* This factor is not in dispute. The report permits no evaluation of any privilege claim, the required description is absent for all 1,706 entries, and the Sheriff has conceded the point twice. (Ex. 8 at 1; Ex. 10 at 1.) *Universal City* addressed both halves of the problem. The general, category-wide objection the defendant made in its written response was "ineffective to preserve the privileges,"

230 F.R.D. at 694, and the log it later served "fail[ed] to identify the capacity of many recipients and d[id] not provide sufficient information to assess the claim of privilege," *id.* at 696. The court found waiver on both grounds. The Sheriff's first log was categorical in the same way, and his report states no one's capacity and provides no descriptions from which one could assess privilege. *Meade* reached the same result on closer facts: a revised log using "boilerplate assertions regarding the subject matter of the documents" and "broad categorical descriptions that were uninformative and misleading" waived the privilege, and the court ordered immediate production of every document it had not itself found privileged on in camera review. 250 F. Supp. 3d at 1396.

*Timeliness.* The Sheriff asserted these privileges on December 9, 2025 and served the report on February 3, 2026. Plaintiff identified the deficiency in Rule 37 correspondence on January 13 and the parties met and conferred via videoconference on January 28, 2026. Following receipt of the Privilege Report, Plaintiff reviewed and itemized the 1,647 challenged entries on April 23, conferred via videoconference May 14, and ultimately set a July 28 deadline in continuing correspondence. No compliant log has been served. *Pensacola Firefighters* found waiver where the defendant produced a log of seven items, then twenty-three, after having been ordered to log. 265 F.R.D. at 593–94. *Universal City* found waiver where the log arrived more than eight months after the Rule 34 responses were due

and omitted the recipients' capacities and sufficient descriptions. 230 F.R.D. at 695–96.

*Magnitude.* The task is modest by the Sheriff's own measure: 1,706 entries, about one minute each and 22 hours in all, reduced further by Plaintiff's withdrawal of approximately 544 entries. (Ex. 8 at 1–2.) Volume is not an answer in any event. As noted above, "the fact that the compilation of such a log is burdensome will not obviate the obligation of providing one." *Pensacola Firefighters*, 265 F.R.D. at 593. In *Universal City* the court observed that "review and production of 13,000 pages of documents is no small task," but "it is manageable." 230 F.R.D. at 695.

*Other circumstances.* Plaintiff conferred, categorized every challenged entry, and twice narrowed the dispute. The Sheriff has not asked for more time or proposed a schedule. *Universal City* treated that omission as significant: a party that needs longer "should have obtained an extension of time . . . or filed a motion for protective order." 230 F.R.D. at 695. Rule 26(c)(1) offered the Sheriff both, and he pursued neither. Instead he has stated, twice in writing, that he will not do the work unless Plaintiff first satisfies him the documents are worth reviewing. (Ex. 8 at 2; Ex. 10 at 1.)

*Prejudice.* Plaintiff has taken six depositions of Sheriff's Office employees and plans to take additional depositions, including of individuals (including the Sheriff) who repeatedly appear on the Privilege Report. Plaintiff cannot examine

Sheriff's Office witnesses about the incident, the investigation, or the agency's policies without knowing what has been withheld on those subjects or why. Each further round of logging, followed by a further round of challenges, pushes that determination past the depositions it bears on.

Production is the ordinary consequence of an unsupported claim, not a sanction. The Sheriff bears the burden of establishing privilege document by document and by a preponderance of the evidence. *Renco*, 164 F.4th at 1344–45. Where that burden is not carried, the claim fails on the showing the withholding party elected to make. Nothing in the Rules treats an undescribed designation as valid until the party asserting it decides the documents are worth describing. *Renco* affirmed on that footing, rejecting the contention that a party was "entitled to additional court process despite having failed to carry its evidentiary burden." *Id.* at 1347. The Sheriff chose the review method, was told in January 2026 what Rule 26(b)(5)(A) requires, and has had nearly eight months since to correct course.

*Renco* also answers the responses the Sheriff is likely to make. He may argue that the Court should examine the entries itself, or hold a hearing, before finding waiver. *Renco* holds otherwise: "the law does not require a district court to parse deficient privilege logs in the hunt for a possible claim of privilege or protection." 164 F.4th at 1345. The court there was "not obliged to conduct any further analysis or overlook the Log's deficiencies." *Id.* Requiring a court to conduct an in camera

review or a hearing whenever privilege is asserted, "regardless of whether the assertion has been supported in any way . . . would improperly shift the burden from the party asserting the privilege to the trial court," an approach the Eleventh Circuit called "particularly unsustainable in the face of modern litigation, which often involves voluminous discovery." *Id.* at 1347. "Only after that individualized showing has been made is the district court required to assess the validity of each claim, document-by-document." *Id.*

He may also ask for leave to serve a third log. *Renco* affirmed the denial of that request where the party "never moved the district court for leave to amend" and "was given ample notice of the deficiencies in the Log" yet "again submitted the same Log." *Id.* The Sheriff has had at least as much notice. Plaintiff explained the deficiency in January 2026, set out the elements of the privilege, and asked to confer on the parameters of a compliant log. (Ex. 3 at 4–5.) The parties met and conferred via videoconference on January 28, 2026. After receipt of the Privilege Report, Plaintiff itemized 1,647 challenged entries in April and identified, category by category, what was missing. (Ex. 6; Ex. 7.) The parties met and conferred via videoconference and continued to exchange correspondence. Plaintiff ultimately set a July 28 deadline for the Sheriff to meet his basic obligations under the Federal Rules of Civil Procedure and stated that it would treat a failure to meet it as a waiver.

(Ex. 9 at 2.) The Sheriff has not moved for relief of any kind, has not proposed a schedule, and has not served a corrected entry for a single document.

Plaintiff is not asking the Court to find a privilege lost by inadvertence. The Sheriff was told what the Rule requires repeatedly, agrees he has not complied, and has decided not to comply. An order simply directing him to log would grant, months late, an unwarranted extension, and would leave Plaintiff to then litigate the adequacy of whatever descriptions counsel then composed. This Court has addressed a similar request: in *Pensacola Firefighters* the defendant's "claim of privilege [was] too little, too late," it was "effectively asking for leave to start over," and the court found "the privilege has been waived." 265 F.R.D. at 594.

Plaintiff has narrowed its request so that an order of production will not reach the core of the privilege. The 544 entries involving Sniffen & Spellman, P.A. and Spellman Law, P.A. are excluded, and what remains are 1,103 entries over which no presumption of privilege attaches and over which the Sheriff willfully failed to support a claim of privilege. Because the Sheriff has not carried his burden as to those entries, they should be produced. *See Renco*, 164 F.4th at 1344–45.

## CONCLUSION

Plaintiff respectfully requests an order deeming waived any privilege as to the ~1,100 documents identified on the spreadsheet accompanying Plaintiff's April 23, 2026 challenge letter that do not involve the Sheriff's litigation counsel, and

requiring their production within fourteen days. Plaintiff further seeks her reasonable expenses incurred in making this motion under Rule 37(a)(5)(A).

**LOCAL RULE 7.1(B) CERTIFICATE**

Counsel for Plaintiff counsel conferred in good faith with counsel for Sheriff Aden by correspondence dated January 13, April 23, and July 14, 2026, and by videoconferences on January 28 and May 14, 2026. Sheriff Aden's counsel responded by letters dated June 16 and August 3, 2026. The dispute is unresolved.

**LOCAL RULE 7.1(F) CERTIFICATE**

This memorandum contains 5,349 words, exclusive of the case style, signature block, and certificates.

**CERTIFICATE OF SERVICE**

I certify that on August 31, 2026 I filed the foregoing using the CM/ECF system, which will serve all counsel of record.

Dated: August 31, 2026

Respectfully submitted,

*/s/ Benjamin Berkman*

Benjamin Berkman
bberkman@rblaw.net
Romanucci & Blandin, LLC
321 N. Clark St., Suite 900

Brian H. Barr (bbarr@levinlaw.com)
William F. Cash III (bcash@levinlaw.com)
Chelsie L. Green (cgreen@levinlaw.com)
Sara Papantonio (spapantonio@levinlaw.com)

Chicago, IL 60654
Telephone: (312) 253-1000

Levin, Papantonio, Proctor, Buchanan,
O'Brien, Barr & Mougey, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7000

*Counsel for Plaintiff*