# Exhibit 3

ROMANUCCI BLANDIN LAW

**Benjamin Berkman**
**Direct: (312) 253-8825**
**Email: bberkman@rblaw.net**

January 13, 2026

Michael Spellman
Christen Petruzzelli
Spellman Law P.A.
905 E. Park Avenue
Tallahassee FL 32301

**Re: *Fortson v. Aden et al.*, Case No. 3:25-cv-00591 (N.D. Fla.), Plaintiff's Rule 37 Letter**

Counsel,

I write regarding certain deficiencies in Defendant Aden's ("Defendant Aden" or "Sheriff") discovery responses and document production.

**Interrogatory Nos. 8 and 9**

Interrogatory No. 8 asked Defendant Aden to identify "each instance in which an officer or employee of the Okaloosa County Sheriff used deadly force on or directed at an individual, including but not limited to any instance in which an officer or employee discharged a firearm in proximity to another person," and requested, for each such instance: (a) the date of the instance; (b) the officers or employees involved In the instance; and (c) the type of force used (e.g., firearm discharge, taser discharge, baton strike, etc.).

The interrogatories identified the relevant time period for the request as January 1, 2018 to the present. The Sheriff did not object to the time period for this interrogatory. In response, the Sheriff identified nine instances in which OCSO deputies used deadly force. Each of these identified instances involved a firearm or rifle discharge, and the earliest such incident identified is dated August 30, 2021.

The Sheriff's response to Interrogatory 8 does not appear to be complete. The interrogatory response does not identify a single use of deadly force prior to August 30, 2021, but other documentation produced by the Sheriff indicates that OCSO deputies used deadly force multiple times between 2018 and August 30, 2021. For example, the 2019 Annual Analysis of Use of Force Activities (OCSO-Fortson 008220-22) notes: "In 2019, members of the OCSO were engaged in two deadly force encounters." Yet neither of those acknowledged deadly force encounters is reflected in the Sheriff's Interrogatory Response. Please supplement your response to Interrogatory No. 8 to include all deadly force instances between January 1, 2018 and the present.

Moreover, each of the instances identified in response to Interrogatory 8 involves a firearm or rifle discharge. But the use of deadly force is not limited to firearm or rifle discharges. Other uses of force—for instance, baton strikes to certain areas, certain taser discharges, etc.—amount to deadly force based on the specific circumstances of the force applied. Plaintiff's interrogatories defined "deadly force" to mean "any force capable of causing the death or serious injury of an individual, regardless of whether the use of force in fact causes the death or serious

ROMANUCCI BLANDIN LAW

**Benjamin Berkman**
**Direct: (312) 253-8825**
**Email: bberkman@rblaw.net**

injury of an individual." The Sheriff lodged no objections to that definition or to Interrogatory 8. Accordingly, any incidents where a use of force other than a firearm discharge amounted to deadly force—e.g., force capable of causing death or serious injury, irrespective of whether anyone actually died—must be identified. Please supplement your response to Interrogatory No. 8 to include any instance in which an OCSO deputy or employee used deadly force, even if it did not involve a firearm discharge.

The Sheriff's response to Interrogatory No. 9 is deficient for the same reasons. That interrogatory called for identification of any "investigation, review, analysis, assessment, or disciplinary action or process taken by any entity related to each instance responsive to Interrogatory 8," and specific information about each of those events. The Sheriff identified certain information associated with the same nine events it identified in response to Interrogatory No. 8. The Sheriff's response to Interrogatory No. 9 is underinclusive for the same reasons its response to Interrogatory No. 8 is underinclusive. In addition, the response to Interrogatory 9 identified a January 5, 2024 incident in which it was concluded the deadly force used by a deputy was not objectively reasonable under OCSO policy. The response to interrogatory 9, however, does not identify any discipline imposed on the deputy (or anyone else). Please supplement your response to Interrogatory No. 9 to remedy the foregoing issues.

**RFP 21**

This request seeks documents sufficient to show: (a) all incidents during the period of May 3, 2014 to present in which a Okaloosa County sheriff's deputy used force against a person; (b) any determination made by Okaloosa County sheriff or an independent entity that any such use of force was in violation of the law or Okaloosa County Sheriff's policy; and (c) any discipline, retraining, or other corrective action taken or recommended as a result. The Sheriff objects to this request as overbroad and disproportionate, as Deputy Duran used deadly force in this case. But the use of deadly force is not the only kind of force relevant to this litigation; whether the OCSO has engaged in a pattern of excessive force is material to Plaintiff's Monell claim even if the excessive force used did not always amount to deadly force. Nonetheless, to address the Sheriff's concerns about breadth, Plaintiff will narrow this particular request to only those responsive documents where OCSO, an OCSO employee, or an independent entity made a finding—at any stage—that an OCSO employee used force in violation of the law or OCSO policy. Please produce all documents responsive to RFP 21 for any instance where such a finding was made.

**RFP 32**

RFP 32 requested "[a]ll insurance policies that may provide coverage for the claims asserted in this action, including but not limited to liability insurance, excess insurance, and umbrella policies." The Sheriff lodged no objection and indicated that he was producing all responsive documents, but no responsive documents were produced. Please produce all responsive documents.

ROMANUCCI BLANDIN LAW

Benjamin Berkman
Direct: (312) 253-8825
Email: bberkman@rblaw.net

**RFP 33**

RFP 33 seeks "[a]ll Documents relating to external investigation into You relating to the use of force or responses to calls at residences, including but not limited to citizen complaints, U.S. Department of Justice inquiries, press inquiries, public records requests and Your response to each."

The Sheriff objects to this request as overbroad and disproportionate on several bases, including that (1) it concerns uses of force beyond uses of deadly force; and (2) it would be burdensome to search for responsive press inquiries and public records requests.

As noted above, the first objection lacks merit because the OCSO office's use of force writ large is material to this litigation, not just the OCSO's use of deadly force. To address the Sheriff's concerns regarding breadth, however, Plaintiff will narrow this request to include (a) all documents related to any external investigation by any government agency related to the OCSO's use of force or responses to calls at residences (regardless of whether the event involved the use of deadly force); and (b) as proposed by the Sheriff, any press inquiries and public records request documents (and documents related thereto) related to uses of deadly force by OCSO.

With respect to external investigations by government entities, the Sheriff's response to RFP 33 indicates that the "Sheriff is unaware of any external investigations into the Sheriff relating to the use of any force or responses to calls at residences from citizen complaints or the U.S. Department of Justice." Notably, however, this response omits the external agencies most likely to have conducted external investigations into OCSO's conduct: the Florida Department of Law Enforcement, the Florida Attorney General's Office, and the Office of State's Attorney, First Judicial Circuit of Florida. Please produce all responsive documents relating to any external government investigation into uses of force or responses to calls, including but not limited to investigations by the foregoing entities.

**RFP 34**

RFP 34 seeks "[a]ll Documents relating to or reflecting any and all efforts to review, investigate, analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem relating to the use of force by Okaloosa County Sheriff's employees and officers between May 3, 2013 and the present."

In response, the Sheriff provided a description of certain types of analyses conducted and noted: "The Annual Analysis of Use of Force Incidents for calendar years 2013 through 2024 are being produced. In addition, spreadsheets which list all uses of force between 2021 and 2024 are being produced and a summary document for uses of force between 2013 and 2020." But it appears that the Sheriff only produced the the annual analyses, and produced neither apreadsheets listing all uses of force between 2021 and 2024 nor a summary document for uses of force between 2013 and 2020. Please produce these documents ASAP, so that we may determine the adequacy of the Sheriff's response to RFP 34.

ROMANUCCI BLANDIN LAW

**Benjamin Berkman**
**Direct: (312) 253-8825**
**Email: bberkman@rblaw.net**

**RFP 35**

RFP 35 seeks all "other lawsuits against You." The Sheriff objects that this is overbroad and disproportionate because all other lawsuits would include those that involve issues unrelated to this case, and because the information is easily accessible to Plaintiff. The latter argument lacks merit; while some of the information sought may be in the public domain, the Sheriff has much more ready and consolidated access to information about lawsuits filed against him and his predecessors. Nonetheless, to address the Sheriff's breadth concerns, Plaintiff will agree to narrow this request to only those lawsuit documents relating to the use of excessive force or responses to calls at residences. Please produce all responsive documents relating to those issues.

**Sheriff's Privilege Log**

The Sheriff produced a privilege log accompanying his production that did not identify withheld documents individually, but instead identified broad categories of withheld documents. The log is insufficient under Federal Rule of Civil Procedure 26(b)(5), which provides that a privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

The Sheriff's log does not meet this standard. For example, the log broadly withholds "[a]ny and all communications between attorney and clients, including but not limited to communications between and among the attorneys and staff of Sniffen & Spellman, P.A., and Sheriff Eric Aden and any of his employees/agents." But this cuts far too broadly: it is not the case that all communications between attorney and clients are privileged; only those communications that meet the following criteria are privileged:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Pensacola Firefighters' Relief & Pension Fund Bd. of Directors v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:09CV53/MCR/MD, 2010 WL 4683935, at *3 (N.D. Fla. Nov. 10, 2010). By withholding all meaningful information about these communications, the Sheriff has not met his burden under Fed. R. Civ. P. 26(b)(5) to "enable other parties to assess the claim" of privilege. For example, by failing to disclose the senders and recipients of communications, the Sheriff has prevented Plaintiff from ascertaining whether communications were made "without the presence of strangers" and to assess whether or not the privilege was "waived by the client." Indeed, Plaintiff is not currently able to ascertain whether any of the withheld documents or

ROMANUCCI BLANDIN LAW

**Benjamin Berkman**
**Direct: (312) 253-8825**
**Email: bberkman@rblaw.net**

communications were even sent by counsel's client, or agents thereof. The log does not contain the bare minimum of information necessary to evaluate whether privilege is properly asserted. Plaintiff requests to meet and confer to arrive at mutually acceptable parameters for a privilege log that complies with Fed. R. Civ. P. 26(b)(5).

Additionally, Plaintiff notes that the Sheriff seeks to withhold "text messages between any individual Defendant and his or her spouse related to this incident." But if Sheriff Aden is in possession of those documents, the spousal privilege has been waived. "The marital communications privilege . . . excludes information privately disclosed between husband and wife in the confidence of the marital relationship. However, the privilege does not apply to communications made in the presence of third parties." *United States v. Abram*, 171 F. App'x 304, 310 (11th Cir. 2006). If Defendant Duran, for example, texted or emailed his spouse from his OCSO device or email account such that his communications are in possession of the Sheriff, Defendant Duran's communications were not "privately disclosed" and were made "in the presence of third parties." Accordingly, these documents must be produced.

**Conclusion**

Please produce the foregoing documents and supplemental interrogatory responses by January 27, 2026, and please provide your availability to meet and confer in advance of that date regarding the format of the Sheriff's privilege log. To the extent you are not willing to provide any of the foregoing discovery, please identify the materials/responses you are unwilling to provide by January 20, 2026 so that we may meet and confer about it at the time we meet and confer regarding the privilege log.

Sincerely,

/s/ *Benjamin Berkman*

Benjamin Berkman

IL Bar (#6329445)
Romanucci & Blandin, LLC
321 N. Clark St., Suite 900
Chicago, IL 60654
312-253-8825