**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**CHANTIMEKKI FORTSON,**

**Plaintiff,**

**v.** **Case No.: 3:25-cv-00591-TKW-ZCB**

**SHERIFF ERIC ADEN, et al.,**

**Defendants.**
______________________________________/

**DEFENDANT SHERIFF ADEN'S RESPONSE**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Defendant, **ERIC ADEN, in his official capacity as Sheriff of Okaloosa County** ("Sheriff Aden" or "Defendant"), through undersigned counsel, hereby responds in opposition to Plaintiff's Motion to Compel Production of Documents Withheld on Defendant Aden's Privilege Report (Doc. 70).

## INTRODUCTION

Plaintiff initiated this case on May 6, 2025, approximately one year after the death of Roger Fortson, upon which this lawsuit is based. (Doc. 1). Defendant Eddie Duran promptly moved to stay the litigation pending resolution of his related criminal proceeding. (Doc. 9). Plaintiff responded in opposition to Defendant Duran's Motion (Doc. 10), and the Court ultimately granted the Motion in part, allowing discovery to proceed against the other Defendants (Doc. 11). On August

29, 2025, the Parties submitted a Joint Report of the Parties' Discovery Planning Conference. (Doc. 31). In it, the Parties agreed to hold an ESI conference by September 26, 2025, at which they would address various issues and submit issues to the Court (Id., p. 10) [1].

On October 20, 2025, Plaintiff served her first set of written discovery, inclusive of forty (40) requests for production. **Exhibit 1, Plaintiff's First Request for Production**. At the time, the Parties had not conducted the ESI planning conference agreed to, nor had Sheriff Aden started running electronic searches for responsive documents.

On December 5, 2025, Sheriff Aden served his written responses to Plaintiff's discovery. **Exhibit 2, Sheriff Aden's Response to Plaintiff's First Request for Production**. Sheriff Aden served limited objections, advising he would be producing responsive documents to many of the requests. **Id.** Sheriff Aden also produced a Privilege Log, advising that attorney-client communications and documents evidencing work product would be withheld from production. **Exhibit 3, Sheriff Aden's Privilege Log**. At the time of Sheriff Aden's response and

[1] The Report stated, "The parties agree to hold an ESI conference to discuss the form(s) of ESI, including metadata, accessibility, redaction, relative costs and burdens, possible search terms, and proportionality on or before September 26, 2025, and will submit any agreed or contested issues for this Court's approval or consideration, as the case may be." (Doc. 31, p. 8). This conference did not occur, the factors were not discussed, and no issues were submitted to this Court until now, through the Plaintiff's Motion.

production of the Privilege Log, Sheriff Aden had not yet engaged an ESI vendor to begin the process of obtaining ESI.

It was not until late December 2025 when Sheriff Aden engaged an ESI vendor and conducted five (5) searches[2]: 1) "Chez Elan", 2) "Confidential AND Duran", 3) "Duran", 4) "Fortson", and 5) "OCSO24OFF005964[3]." These five searches, not constrained to any specified inboxes or outboxes within the Sheriff's Office, or tied to any specific request(s) for production served by Plaintiff, yielded over 12,000 emails. Sheriff Aden began reviewing emails in January and producing responsive emails in February of 2026.

Following conferral with Plaintiff, on February 3, 2026, Sheriff Aden produced an Amended Privilege Log, noting that privilege designations for ESI data were identified on the Privilege Report produced by Sheriff Aden's ESI software. (Doc. 70-4, p. 4; Doc. 70-5). The 1,706 withheld privileged documents were marked as "attorney-client communications" and/or "attorney work product" as they each contain (a) communications to or from the undersigned counsel and/or their staff, or (b) communications to or from Sheriff Aden's general counsel and/or their staff.[4]

---

[2] The five searches were decided by Sheriff Aden's counsel in an attempt to obtain relevant ESI, not in conjunction with any particular requests for production served by Plaintiff and not as the result of any ESI planning conference.

[3] This was the case number for the incident upon which this lawsuit is based.

[4] As to the few documents that do not have a privilege designation on the Privilege Report, two out of three of those documents (IST 4621.0001 and IST 5746.0001) were attachments to attorney-client communications, and one out of three of those

(Doc. 70-5). The Privilege Report provided (a) the date and time of each communication, (b) the subject line of each communication, (c) the author of each communication, (d) the recipient(s) of each communication, and (e) the name(s) of each file in each communication. (Id.). The majority of the communications are marked as confidential and/or privileged in the email subject line. (Id.).

Plaintiff's counsel first wrote to the undersigned about the privilege log issue on April 23, 2026. (Doc. 70-6). With it, Plaintiff's counsel provided a categorization of challenges to the Privilege Report. (Doc. 70-7). Put succinctly, Plaintiff argued (1) emails including a public relations firm could not be privileged, (2) the log contained insufficient information on some emails to make an adequate determination on the application of privilege, and (3) some emails were not privileged. (Id., p. 4).

Following a conference with Plaintiff's counsel on May 14, 2026, the undersigned wrote to Plaintiff's counsel on June 16, 2026, regarding the privilege log issue. (Doc. 70-8). In that correspondence, the undersigned acknowledged asserting privilege objections across a broad set of categories including Sheriff Aden's legal counsel, admitting the log did not provide sufficient detail for the assertions of privilege but noting all emails where privilege was asserted were sent

---

documents (IST 1699) was found to be non-responsive, so it should not have been included in the Privilege Report at all.

*after* the subject shooting. (Id., p. 1). The undersigned counsel explained his office conducted a sampling of the subject emails, reviewing a total of seventy (70) documents, discovering it took approximately one (1) minute for each document to be assessed for privilege and/or described for the application of privilege. (Id.). The undersigned explained this meant it would take approximately twenty-two (22) hours of attorney time just to comply with Plaintiff's counsel's request for a detailed privilege log which, in light of the little (if any) probative value such documents would have, was not proportional. (Id., pp. 1-2). As of the time of that correspondence, Sheriff Aden had already incurred $50,000 in ESI vendor costs and attorney and/or paralegal time.[5] (Id., p. 2). The undersigned counsel concluded the correspondence requesting an explanation for the demand being proportional, and whether a less time-consuming alternative could alleviate Plaintiff's counsel's concerns. (Id., p. 3).

On July 14, 2026, Plaintiff's counsel wrote to the undersigned, explaining Sheriff Aden's lack of technical compliance with Rule 26(b)(5)(A) and purported waiver of a proportionality objection based on Sheriff Aden's written responses to Plaintiff's First Request for Production. (Doc. 70-9, p. 1). Plaintiff's counsel offered no explanation how reviewing the subject documents was relevant and proportional

[5] This number has only gone up due to additional ESI searches being conducted, reviewed, and produced.

to the case, merely concluding the withheld communications "directly concern" the incident (Id., p. 2), nor did Plaintiff's counsel offer any compromise.

On August 3, 2026, the undersigned wrote to Plaintiff's counsel:

> We appear to be going in circles about the Sheriff's privilege log. We understand your reliance on the procedural aspect of the log; we have been frank that our log failed to describe the nature of the 1,700 documents at issue in sufficient detail.
>
> You have provided us with nothing but general platitudes – such as, "The withheld communications directly concern the very incident in which Mr. Fortson's rights were violated" – to support your assertion the discovery is proportional to the needs of this case. This is simply not enough. The test to determine proportionality takes several factors into account, and the ones we continue to believe remain lacking are "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." We have made this clear in our previous correspondence and we do so again: what is the specific issue that will be resolved for the burden and expense of reviewing and combing through hundreds of post-incident communications with a public relations firm and the Sheriff's General Counsel, among others? If we can be given something more informative, perhaps we can resolve this. Talking around it, however, is getting us nowhere.

(Doc. 70-10, p. 1).

Following Plaintiff's filing of the Motion to Compel, this Court ordered the parties to confer on the matter via telephonically or in person. (Doc. 74). On that videoconference call on September 10, 2026, the Sheriff's counsel *again* asked Plaintiff's counsel for the relevance of the subject communications. *For the first time*, Plaintiff's counsel provided an explanation, specifically, that the communications *could* relate to Sheriff Aden's training on use of force. The Sheriff's

counsel offered to search the Privilege Report for any documents which contain the word "train"[6] (with a wild card) and review the application of privilege and provide an explanation of privilege for those documents, as an example of a way to compromise on the matter. The Sheriff's counsel offered to work cooperatively with Plaintiff's counsel to identify other search terms that might narrow the list to items that are potentially relevant to any issue before the Court. This was not sufficient for Plaintiff's counsel, nor was *any* limitation or compromise. The call ended with the Sheriff's counsel asking that all counsel continue to think about possible ways to resolve this matter short of Court intervention, though still as of this date, no prospect has been offered by Plaintiff's counsel.

Through the instant Motion, Plaintiff requests not a compliant privilege log, but a production of all withheld documents— minus those involving the Sheriff's litigation counsel (the undersigned counsel and his firm). (Doc. 70).

## MEMORANDUM OF LAW

### I. Plaintiff's Counsel Failed to Meaningfully Confer and for This Reason Alone, the Motion Should be Denied

"Discovery rules are designed to ensure that parties make a good faith effort to resolve their differences and thereby obviate the need for judicial intervention and the expenditure of judicial resources." *Ink-Trax Inc. v. Indian Harbor Ins. Co.*, No.

[6] A quick search of the Privilege Report reveals the word "train" comes up forty-two (42) times.

5:19-cv-177-MCR/MJF, 2020 WL 5997642, at *1 (N.D. Fla. Jan. 14, 2020). A party moving to compel discovery must include a certification that the movant has, *in good faith*, conferred or attempted to confer with the person or party failing to make discovery. *Fed. R. Civ. P.* 37(a)(1); *N.D. Fla. Loc. R.* 7.1(B). The parties must "attempt in good faith to resolve the issue." *DeepGulf, Inc. v. Moszkowski*, 330 F.R.D. 600, 611 (N.D. Fla. 2019) (citing *N.D. Fla. Loc. R.* 7.1(B)). "A court may deny a motion when the movant has not shown that he made a good faith effort to confer and work with an opposing party." *Id.* at 612 (citations omitted). Parties should "seek to resolve issues without necessitating court involvement" and "propose possible solutions." *Id.* "In this context, confer means 'to have a conference; compare and exchange ideas; meet for discussion; converse.'" *Haugdahl v. Florida Dep't of Agric. & Consumer Services*, No. 4:19-cv-87-MW/MJF, 2019 WL 6271267, at *1 (N.D. Fla. Oct. 17, 2019) (citations omitted). "[S]imply corresponding with opposing counsel is not considered a good-faith attempt to confer or have a conference to resolve discovery disputes." *Id.* A conferral is a conversation "that genuinely attempts to resolve the issue before coming to the court and not simply 'an exchange of ultimatums.'" *Hardrick v. Wendelta, Inc.*, No. 5:22-cv-67-TKW/MJF, 2023 WL 12195969, at *2 (N.D. Fla. Jan. 23, 2023) (citations omitted).

Plaintiff's counsel failed to meaningfully confer prior to filing the Motion (or since filing the Motion) because they made no genuine attempt to resolve the matter and simply made demands without any offer or interest in coming to a reasonable resolution. The Sheriff's lawyers have attempted numerous times to gain an appreciation for Plaintiff's counsel's perceived importance and proportionality of these issues and was repeatedly met with vague and conclusory assertions of relevance and Sheriff Aden's "waiver" of objections. To date, Plaintiff's counsel offered *only one* potential yet speculative connection to the subject documents: the emails *might* pertain to Sheriff Aden's training. Thinking the parties were finally making progress, in the most recent conferral, the Sheriff's counsel offered to find all the subject documents which contain the word "train" in the email subject line, review those emails, and provide detailed explanations for the privilege assertions (or produce the documents in the event privilege did not apply or apply to the whole document). The Sheriff's counsel expressed a willingness in this effort for other topics that Plaintiff's counsel might deem relevant and proportional, though Plaintiff's counsel has not provided any. Plaintiff's counsel did not accept the Sheriff's counsel's offer nor propose any counteroffer. Plaintiff's counsel's "conferral" has been no more than a demand for strict compliance – they want all the listed documents, now. For this reason alone, the Motion should be denied.

## II. The Court is Not Required to Weigh Form Over Substance as Related to Sheriff Aden's Privilege Log

Pursuant to Fed. R. Civ. P. 26(b)(5)(A), when a party withholds discoverable information based on privilege, the party must (a) expressly make the claim and (b) describe the nature of the documents in a manner that, without revealing privileged information, will enable the other parties to assess the claim of privilege.

In *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, the United States District Court for the Middle District of Florida evaluated a party's assertion of a burdensomeness objection to producing a detailed privilege log. No. 2:21-cv-41-KCD, 2023 WL 2788873 (M.D. Fla. Mar. 8, 2023). The Court found:

> [The responding party] is correct that an itemized privileged log is not always necessary. *See Teledyne Instruments, Inc. v. Cairns*, No. 6:12-cv-854-ORL-28, 2013 WL 5781274, at *15 (M.D. Fla. Oct. 25, 2013). As with all discovery, Rule 26 requires proportionality. "Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected." *Id.* Where "a document-by-document listing would be unduly burdensome," a party may resort to other methods such as categorical logging. *See, e.g., Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, No. 6:14-cv-749-ORL-41, 2015 WL 1470971, at *8 (M.D. Fla. Mar. 31, 2015).

*Id.* at *2.

Sheriff Aden's Privilege Report provides Plaintiff with sufficient information to apprise Plaintiff of the nature of the withheld documents to assess the claim of privilege. This is proven by the fact that Plaintiff's counsel has provided Sheriff's

counsel with a detailed report of Plaintiff's challenges to Sheriff Aden's claims of privilege. (Doc. 70-7).

### *A. The Presence of a Public Relations Representative in Confidential Communications Does Not Waive Privilege*

Plaintiff challenges communications including members from a public relations firm, arguing that a privileged communication loses its protection if made in the presence of a third party. (Doc. 70, pp. 12-13). While this is generally true, courts have recognized "in today's complicated world, attorneys cannot work alone and must hire others to assist them; otherwise they would not be able to render adequate legal advice." *In re Tri State Outdoor Media Group, Inc.*, 283 B.R. 358, 362 (Bankr. M.D. Ga. 2002). Courts look to the purpose of the involvement of the agent in determining whether a privilege applies, such as whether the consultant was hired to assist with business decisions or to assist an attorney with his or her counseling functions. *Byrnes v. Empire Blue Cross Blue Shield*, No. 98-CIV-8520(BSJ)(MHD), 1999 WL 1006312, at *2 (S.D.N.Y. Nov. 4, 1999).

In *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Attorneys*, P.A., the District Court for the Southern District of Florida discussed the two approaches to the agency exception: one narrow and one broader. 519 F. Supp. 3d 1184, 1199 (S.D. Fla. 2021). "The narrow approach applies the exception only to persons identified as 'translators'… the [broader] approach … extend[s] the waiver to a broader array of professionals with whom communication may be necessary for

the provision of legal advice." *Id.* The Court cited a New York Southern District case which found the agency exception applied to communications with a public relations firm, explaining "the [PR] firm provided much-needed 'outside help' to assist the attorney, and that the firm's assistance 'had a close nexus to the attorney's role in advocating the client's cause before a court or other decision-making body.'" *Id.* (citing *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 326 (S.D.N.Y. 2003)).

In *Wyndham Vacation Ownership, Inc. v. Reed Hein & Associates, LLC*, the District Court for the Middle District of Florida noted "[t]he federal agency exception is substantially similar to the exceptions provided for in Fla. Stat. § 90.502(1)(c), which states that a communication between a lawyer and a client is confidential if it is not intended to be disclosed to third persons other than 'those to whom disclosure is in furtherance of the rendition of legal services to the client or those reasonably necessary for the transmission of the communication.'" No. 6:18-cv-2171-ORL-31-DCI, 2019 WL 9091666, at *13 (M.D. Fla. Dec. 9, 2019) (cleaned up). The Court found the broader approach to the agency exception is consistent with Florida law and the pertinent question is whether the agent's services were reasonably necessary for the attorney's effective representation of the client. *Id.* at *13-14. *See also In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 834 (Bankr. S.D.

Fla. 2016) (finding broader approach to "agency exception" is more consistent with the purpose for the exception and thus better reasoned).

> The modern lawyer almost invariably advises his client upon not only what is permissible but also what is desirable. And it is in the ... public interest that the lawyer should regard himself as more than [a] predicter of legal consequences. His duty to society as well as to his client involves many relevant social, economic, political and philosophical considerations. And the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice.

*In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007) (citations omitted).

In the instant case, Sheriff Aden hired a public relations team to assist with the Sheriff's statements pertaining to the death of Roger Fortson a mere few days after the incident, knowing that litigation was almost certain and that the Sheriff's statements may be used in the instant litigation. The Sheriff's general counsel, as well as the Sheriff's litigation counsel (the undersigned), regularly communicated with the public relations representative regarding the Sheriff's press activities and communications as an extension of their representation and counsel of the Sheriff in the instant matter. *See also In re Abilify (Aripiprazole) Products Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("Although as a general proposition communications with public relations consultants about non-legal issues might not be privileged, where the public relations firm is retained to assist the corporation and its attorneys in responding to anticipated litigation or threatened or ongoing government investigations the privilege is not lost."). For

these reasons, Plaintiff's assertion that the inclusion of a public relations representative in a privileged communication or document waives the attorney-client or work product privileges outright is incorrect. While Sheriff Aden concedes that there are likely communications or portions of communications that are not privileged, the burden and expense of making those determinations is not proportional to the needs of the case because such communications/documents are not probative of any fact in consequence. *See* § III.

### *B. Sheriff Aden's General Counsel's Title Does Not Negate the Application of Privilege*

Plaintiff contends that communications with the Sheriff's general counsel, Marsha Weaver, are not privileged because she is not "retained specifically to serve as litigation counsel." (Doc. 70, p. 12). First, Sheriff Aden, and not Plaintiff, gets to decide the general counsel's role in his representation. Second, "[c]orporations, acting through their employees, are entitled to the privilege for both in house and outside counsel." *United States v. Lockheed Martin Corp.*, 995 F. Supp. 1460, 1464 (M.D. Fla. 1998).

Sheriff Aden's general counsel is not merely a corporate employee of the Sheriff — she is the Sheriff's chief legal counsel, she litigates many of the Sheriff's cases, and she is actively involved in the advice and counsel in the instant litigation, notwithstanding the undersigned counsel's retention. Sheriff Aden's general counsel's chief responsibility is providing legal counsel on all matters involving the

Sheriff's Office. When a matter involving an employment dispute arises, she wears the hat of employment counsel. When a litigation matter, such as this one, comes in, she wears the hat of litigation counsel. Her employment status with the Sheriff's Office does not negate her role as its legal counsel, establishing a privileged relationship. Thus, Plaintiff's assertion that the Sheriff's general counsel's internal communications and work product are not privileged because she was not specifically retained as litigation counsel is inaccurate. While Sheriff Aden concedes that there are likely communications or portions of communications that are not privileged, the burden and expense of making those determinations is not proportional to the needs of the case because such communications/documents are not probative of any fact in consequence. *See* § III.

## III. The Requested Information is Not Proportional to the Needs of the Case, and the Objections are Not Waived

The scope of discovery is non-privileged material that is relevant and proportional to the needs of the case. *Fed. R. Civ. P.* 26(b)(1). Evidence is relevant if it has any tendency to prove or disprove a fact of consequence. *U.S. v. Patrick*, 513 Fed. Appx. 882, 886 (11th Cir. 2013). In weighing proportionality, courts should consider (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6)

whether the burden or expense of the proposed discovery outweighs its likely benefit. *Fed. R. Civ. P.* 26(b)(1).

Plaintiff argues Sheriff Aden made no objection to overbreadth and burdensomeness in responding to Plaintiff's First Request for Production. (Doc. 70, p. 16). The point is a misnomer because the production at issue (ESI) was not tied to any particular request for production in which an objection would have been raised. More importantly, Sheriff Aden would have had no ability to object based on overbreadth or proportionality without knowing the scope of potentially responsive documents, which, as related to the subject ESI, he did not know until late December 2025 or early January 2026, after Sheriff Aden's response to the First Request for Production was due. Rather, the documents produced in response to the Sheriff's First Request for Production were documents maintained and obtained easily internally at the Sheriff's Office (i.e., body camera footage, incident reports, investigative reports, etc..), not as part of ESI discovery in this case. The fact that ESI documents happen to be responsive to some of Plaintiff's forty (40) requests for production does not mean they are being produced in conjunction with those requests. And in fact, they were not. *See also McCreight v. AuburnBank*, No. 3:19-cv-865-MHT-SMD, 2021 WL 6926818, at *2 (M.D. Ala. Mar. 30, 2021) (discussing Sedona Principles on ESI and difference between production pursuant to *Fed. R.*

*Civ. P.* 34(b)(2)(E)(i), which requires labelling of documents responsive to particular requests, and 34(b)(2)(E)(ii), which does not).

Plaintiff argues the subject ESI is relevant because they include Sheriff's Office personnel's own statements regarding the event in suit. (Doc., 70, p. 17). But as Plaintiff concedes, the majority of the subject communications concern the Sheriff's media statements pertaining to the event — not the substance of training, supervision, or policies of the Sheriff's Office which Sheriff Aden concedes *would* be relevant to Plaintiff's claims against the Sheriff. What Sheriff Aden said or didn't say about the incident to the public, and the reasons why (which are predominantly privileged, anyhow), is not an important issue in this action. To prove her claims, Plaintiff needs to establish a policy, custom, or practice of the Sheriff caused a constitutional deprivation to Roger Fortson, and/or that the Sheriff's negligence caused Roger Fortson's death. Plaintiff has failed to establish a logical connection between those claims and the subject ESI.

Plaintiff made no effort at establishing any of the communications with "outside agencies" are relevant to her claims in this action either. Plaintiff points out the subject lines identify invitations to a Town Hall, correspondence with Defendant Duran's former employer, and production of the Sheriff's Office's Internal Affairs report to the State Attorney's Office. (Doc. 70, pp. 13-14). How these documents

could conceivably make any fact of consequence more or less probable is wholly unclear and unsupported in Plaintiff's briefing.

In truth, Plaintiff is attempting a fishing expedition for a party-opponent statement against the Sheriff's interest. Such a hypothetical statement's discoverability does not justify the demands Plaintiff is making, namely, review, identification, and production of over one thousand documents, most of which are plainly irrelevant to the instant matter. This is especially true where Plaintiff has proposed and Sheriff Aden has agreed to review and produce documents responsive to multiple search combinations targeted to Plaintiff's claims:

> ("Use of Force" OR "Response to Resistance") w/ 10 (guid! OR policy OR directive OR training);
>
> lawful AND (firearm OR gun) AND (public OR citizen) w/10 (guid! OR policy OR directive OR training);
>
> (civilian OR citizen) AND complaint AND force) w/10 (guid! OR policy OR directive OR training);
>
> (deputy AND disciplin!) w/10 (guid! OR policy OR directive OR training); and
>
> (knock w/5 announce) w/10 (guid! OR policy OR directive OR training.

As to communications involving Plaintiff's counsel, those communications are equally accessible to Plaintiff, thus, the burden in requiring the Sheriff to parse through, identify, and produce those documents is not proportional here.

Because the underlying communications are principally irrelevant to this action, and Plaintiff has not identified any particular communication(s) which are or appear to be relevant, the burden and cost of going through each and every communication to determine what portions are not privileged, providing those details, and producing the non-privileged portions are not proportional to the needs of the case.

At no point did Sheriff Aden waive or delay his assertion of privilege. Those privileges have been asserted at each stage in discovery. The Sheriff's Privilege Report expressly makes the claims of privilege relating to over one thousand documents and provided Plaintiff with sufficient information to challenge the assertions. Indeed, the matter is before the Court right now. Immediately when Plaintiff requested a more detailed Rule-compliant log, the undersigned counsel objected on the grounds of proportionality and burdensomeness. Plaintiff's argument is all form and no substance. It does not offer a practical explanation for why thousands of additional dollars should be spent searching for what Plaintiff thinks might be a needle in a haystack. That is not how discovery works, nor is it consistent with the spirit or letter of the Rules of Civil Procedure.

## IV. Even if the Privilege Report is Deficient, Waiver of the Privilege is Not the Appropriate Remedy

Plaintiff does not ask this Court to order a compliant privilege log. She asks the Court to strip Sheriff Aden of the attorney-client privilege and the work product

protection as to approximately 1,103 documents — including communications with the Sheriff's chief legal officer and with the Sheriff's insurer, the Florida Sheriffs Risk Management Fund — as the sanction for a log that omits a narrative description field. No authority Plaintiff cites requires that result. It is disproportionate to the defect, it is irreversible, and it is unnecessary to give Plaintiff the discovery she says she wants.

### *A. Waiver is a Drastic Remedy Reserved for Flagrant or Bad-faith Noncompliance.*

Courts accordingly reject any *per se* rule of waiver and apply a holistic, case-specific inquiry. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (rejecting a per se waiver rule in favor of a "holistic reasonableness analysis"). This District does the same, weighing the sufficiency of the assertion, the timeliness of the objection, the magnitude of the production, and any other circumstances making compliance unusually easy or unusually hard. *Pensacola Firefighters' Relief Pension Fund Bd. of Trs. v. Merrill Lynch*, 265 F.R.D. 589, 593 (N.D. Fla. 2010) (quoting *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. 2005)).

Plaintiff's own authorities did not impose the blanket forfeiture she seeks here. In *Meade v. General Motors, LLC*, the court conducted an *in camera* review and ordered production only of those documents it had itself examined and found unprivileged. 250 F. Supp. 3d 1387, 1396 (N.D. Ga. 2017). Plaintiff concedes the

point. (Doc. 70, p. 20.) *Meade* is therefore authority for review, not for forfeiture without review. And *Pensacola Firefighters* involved a litigant that had already been *ordered* to produce a privilege log and responded with seven items, then twenty-three. 265 F.R.D. at 593–94. No order has ever been entered against Sheriff Aden. He has defied nothing.

***B. Renco Does Not Compel Waiver; it Confirms the Court's discretion.***

Plaintiff's brief treats *In re Renco Group, Inc.* as though it converted a logging defect into an automatic forfeiture. It did no such thing. *Renco* is an abuse of discretion affirmance, and its holdings are framed in terms of what a district court is *not required* to do: it need not "parse deficient privilege logs in the hunt for a possible claim of privilege or protection," and it need not conduct *in camera* review or hold a hearing before ruling. 164 F.4th at 1345, 1347. Nothing in *Renco* holds that a district court *must* find waiver, and the same deferential standard that sustained the ruling there sustains a lesser remedy here.

The facts are also materially different. The party in *Renco* had been told by the district court that its log was deficient and "again submitted the same Log"; it "never moved the district court for leave to amend" and sought instead "additional court process despite having failed to carry its evidentiary burden." *Id.* at 1347. Sheriff Aden has never been told by this Court that his log is deficient, has never resubmitted a log in the face of a ruling, and is not asking the Court to do his work

for him. If the Sheriff's log is found to be deficient, Sheriff Aden would seek leave to serve a compliant log on a date certain and for a protective order fixing its form. *Renco* addresses a party that stood still; it does not govern a party that comes forward with a proposal.

***C. The Reasonableness Factors Favor a Compliant Log, Not Forfeiture.***

**Sufficiency.** The Privilege Report is not the categorical log Rule 26(b)(5)(A) condemns. It is a document-level export identifying, for each of 1,706 entries, the control and family numbers, custodian, title, date, author, sender, recipients and parties copied, subject line, file name and extension, and the privilege asserted. Plaintiff's own instruction to the Sheriff's Office demanded seven categories of information for each withheld document. **Exhibit 1, pp. 5-6, Instruction No. 6**. The Report supplies six of them. Whatever else may be said of it, a log from which Plaintiff was able to construct a document-by-document, category-coded challenge to 1,647 specific entries (Doc. 70-7) is not one that "enable[d]" nothing.

**Timeliness.** The Sheriff asserted privilege in his written responses, served a log with those responses, and served the Privilege Report with the ESI production it described. Compare *Universal City*, where the log arrived more than eight months after the Rule 34 responses were due. 230 F.R.D. at 695. The Sheriff's assertions are not late, although the initial descriptions were thin.

**Magnitude.** Five unconstrained search terms across the Sheriff's Office returned more than 12,000 documents, review of thousands of additional documents collected from other search terms remain ongoing, and the Sheriff has already incurred more than $50,000 in vendor and professional time. To add additional several thousand more dollars to further categorize post-incident communications among counsel is disproportionate to the needs of this case.

**Other circumstances.** Sheriff Aden sampled seventy (70) documents to measure the burden, disclosed his review methodology to opposing counsel without being asked, conferred by videoconference on January 28, May 14, and September 10, 2026, and at the last of those offered to review, describe, and where appropriate produce every entry responsive to search terms drawn from the single relevance theory Plaintiff has ever articulated. The Sheriff's counsel also invited Plaintiff to propose additional terms. Plaintiff accepted none of it and proposed nothing in return. Waiver is a sanction for recalcitrance. The record here shows the opposite.

***D. Proportionality Governs the Method of Compliance with Rule 26(b)(5)(A).***

Plaintiff argues that Rule 26(b)(5)(A) "contains no relevance exception." (Doc. 70, p. 16.) That is beside the point. The Sheriff does not contend that the Rule may be ignored; he contends that the *form and level of detail* the Rule requires are measured by proportionality, as every other discovery obligation is. "Details concerning time, persons, general subject matter, etc., may be appropriate if only a

few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected." *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-cv-854-Orl-28, 2013 WL 5781274, at *15 (M.D. Fla. Oct. 25, 2013).

That understanding is now embedded in the Rules themselves. Effective December 1, 2025, Rules 16(b) and 26(f) direct parties and courts to address "the timing and method for complying with Rule 26(b)(5)(A)" — confirming that the manner of privilege logging is a subject for negotiation and case-specific tailoring rather than a single fixed form. The leading practice authority is to the same effect: there is "no monolithic form of privilege logs," metadata and metadata plus topic logs are appropriate formats, and categorical exclusions are "an effective and appropriate way to mitigate privilege logging burdens." The Sedona Conference, *Commentary on Privilege Logs*, 25 Sedona Conf. J. 221, 234–35, 239–40, 242 (2024).

***E. The Relief Plaintiff Seeks is Disproportionate and Irreversible.***

A privilege, once ordered produced, cannot be restored. The 1,103 entries at issue include the Sheriff's communications with his General Counsel and with the Florida Sheriffs Risk Management Fund concerning these very claims. Plaintiff asks the Court to extinguish those protections not because she has shown any of them unprivileged, but because a column is missing from a spreadsheet. The Federal Rules

supply remedies calibrated to that defect: an order directing a compliant log, *in camera* inspection, sampling of a representative subset, or a protective order under Rule 26(c)(1)(B) specifying the form logging must take. Each of those gives Plaintiff a basis to assess the Sheriff's claims. None of them destroys the privilege of a public officer to obtain and act upon legal advice.

**V. Plaintiff Is Not Entitled to Fees Under Rule 37(a)(5)(A)**

Plaintiff seeks her expenses under Rule 37(a)(5)(A). (Doc. 70, p. 25.) The Rule forecloses an award in three circumstances, and at least two apply.

First, Rule 37(a)(5)(A)(ii) bars an award where the opposing party's position was "substantially justified." A position is substantially justified if it is "justified to a degree that could satisfy a reasonable person," which is to say there is "a genuine dispute" or that "reasonable people could differ" on the issue. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Whether Rule 26(b)(5)(A) permits a metadata log of this kind in a production of this size, and whether the appropriate response to a thin log is a fuller log or the destruction of the privilege, are questions on which courts plainly differ. *Compare Las Brisas*, 2023 WL 2788873, at *2, *and Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, No. 6:14-cv-749-Orl-41, 2015 WL 1470971, at *8 (M.D. Fla. Mar. 31, 2015), *with* Doc. 70, pp. 19–24. The Sheriff's position is at minimum a genuine one.

Second, Rule 37(a)(5)(A)(iii) bars an award where "other circumstances make an award of expenses unjust." Sheriff Aden has produced more than 3,500 documents in ESI production to date, comprising of nearly 15,000 pages, has spent in excess of $50,000 on this production, continues to collect and produce from additional mailboxes, sampled his own review to quantify the burden for Plaintiff's benefit, volunteered a candid account of his methodology, and offered a concrete, targeted compromise keyed to the only relevance theory Plaintiff has ever supplied. Shifting Plaintiff's fees onto a party with that record would be unjust.

Third, Rule 37(a)(5)(A)(i) bars an award where the movant filed "before attempting in good faith to obtain the disclosure or discovery without court action." For the reasons stated in § I, Plaintiff's pre-filing communications consisted of demands for strict compliance unaccompanied by any proposal, and her post-filing conduct — rejecting the Sheriff's September 10 offer without a counteroffer — confirms it.

At a minimum, if the Court grants any part of Plaintiff's motion and denies any part, it should apportion expenses or decline to award them under Rule 37(a)(5)(C).

## CONCLUSION AND ALTERNATIVE RELIEF REQUESTED

Sheriff Aden respectfully requests that the Court deny Plaintiff's Motion to Compel (Doc. 70) and deny Plaintiff's request for expenses under Rule 37(a)(5)(A).

In the event the Court determines that the Privilege Report does not satisfy Rule 26(b)(5)(A), Sheriff Aden respectfully requests, in the alternative, that the Court:

(a) grant leave under Rule 26(b)(5) and Rule 6(b) to serve an amended privilege log within thirty (30) days of the Court's order;

(b) enter a protective order under Rule 26(c)(1)(B) specifying the form of that log, and in particular authorizing (i) logging at the email-family level, with attachments identified by number and file type, (ii) a metadata-plus-topic format rather than individualized narrative descriptions, and (iii) the exclusion from logging of communications with the Sheriff's litigation counsel and of the claims file and investigative materials of the Florida Sheriffs Risk Management Fund, which may be logged categorically;

(c) alternatively, direct *in camera* inspection of a random sample of the challenged entries, with the Court's determinations as to the sample governing the treatment of the remainder; and

(d) grant such other relief as the Court deems just and proper.

Dated this 21st day of September 2026.

Respectfully submitted,

*/s/ Michael P. Spellman*
**MICHAEL P. SPELLMAN**
Florida Bar No. 937975
Email: michael@spellman.law
**MATTHEW J. CARSON**
Florida Bar Number: 0827711
Email: mcarson@spellman.law
**CHRISTEN ANN PETRUZZELLI**
Florida Bar No. 1039528
Email: cpetruzzelli@spellman.law

**SPELLMAN LAW, P.A.**
905 East Park Avenue
Tallahassee, FL 32301
T: (850) 601-1983

***Attorneys for Defendant Sheriff Aden***

## CERTIFICATE OF WORD COUNT

The undersigned certifies that pursuant to Local Rule 7.1(F), this Motion contains 6,342 words.

*/s/ Michael P. Spellman*
**MICHAEL P. SPELLMAN**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21st day of September 2026, a true and correct copy of the foregoing was electronically filed in the US District Court, Northern District of Florida, using the CM/ECF system.

*/s/ Michael P. Spellman*
**MICHAEL P. SPELLMAN**